(91 App. Div. 315.)

McCORD v. LAUTERBACH et al.

(Supreme Court, Appellate Division, First Department. February 11, 1904.)

1. MUNICIPAL CORPORATIONS—WASTE OF PROPERTY—ILLEGAL OFFICIAL ACTS—INJUNCTION BY TAXPAYER.

    Where a taxpayer brings proceedings to restrain the letting of a contract for a public building under Laws 1892, p. 620, c. 301, authorizing such action to prevent waste of property of a municipal corporation or to prevent illegal official acts on the part of its officers, an objection that the bids for "mason, steel, iron," etc., were deposited in a box marked "plumbing" was trifling.

**2. SAME—RULES OF BOARD OF EDUCATION—OPENING OF BIDS.**

That the bids for a public municipal building, the contract for which was to be let in conformity to the rules of the board of education of New York City, were not opened immediately after the time limited for the receipt of bids, as required by such rules, but were opened after an adjournment of one day, was not ground for enjoining letting the contract to the lowest bidder, under Laws 1892, p. 620, c. 301, authorizing suits by taxpayers to prevent waste of the property of a municipal corporation, or to restrain illegal action on the part of its officers.

**3. SAME—BIDS—SURETIES—VERIFICATION.**

That the sureties of the bidder whose statement was required to accompany the bid were not worth the amount stated therein, and that their statement and the statement of the bidder, purporting to be verified as required, were not in fact signed before a notary public, was not ground for sustaining such action, it appearing that the bidder was a responsible party, who could comply with any reasonable requirements, and that the letting of the bid would benefit the city; as the requirements were for its benefit, and it might waive such irregularities.

Appeal from Special Term, New York County.

Bill by John C. McCord against Edward Lauterbach and others, as trustees of the College of the City of New York, to restrain defendants from letting the contract for the erection of a public building. From an order denying plaintiff's motion to continue an injunction pendente lite, he appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, INGRAHAM, and LAUGHLIN, JJ.

L. Laflin Kellogg, for appellant.

John M. Bowers, for respondent Dwyer.

Theodore Connoly, for respondent trustees.

HATCH, J. This is a taxpayer's action, brought pursuant to the authority contained in chapter 301, p. 620, of the Laws of 1892, which authorizes such action where the relief sought is to prevent waste or injury to the property, funds, or estate of a municipal corporation, or to prevent illegal official acts on the part of an officer or officers of such corporation. The purpose which this action seeks is to restrain the trustees of the College of the City of New York from letting a contract for mason, steel, iron, roofing, carpenter, and electric work for buildings to be erected for the use of the College of the City of New York. The complaint of the plaintiff, inter alia, shows that the plaintiff is a taxpayer in the city of New York, the corporate existence of the College of the City of New York, and that the defendant trustees constitute the board of trustees of such corporation; that pursuant to chapter 168, p. 200, of the Laws of 1895, the Legislature authorized such college to procure grounds and erect thereon buildings, and it invested the board of trustees with authority to construct the buildings to be erected upon the land obtained pursuant to the provisions of the act. With respect to the construction the act provided (section 6):

"And the said building shall be built by contract entered into by said board of trustees after advertisement for proposals therefor. All of the provisions of law and ordinances and of the rules and regulations of the board of education of the city of New York relative to advertising for and receiving proposals and entering into contracts for the building of public schools in the city of New York shall be and are hereby made applicable to the awarding of

and entering into the contract or contracts for the building and construction of said buildings and each of them."

Pursuant to the provisions of the act, the board of estimate and apportionment of the city of New York, by resolution, authorized the issuance of bonds to the amount of $2,000,000, to provide for the construction of the buildings. On or about the 25th day of November, 1903, the trustees advertised that "sealed bids or estimates will be received by the committee on buildings of the board of trustees of the College of the City of New York, at the office of the board, borough of Manhattan, in the city of New York, until 12 o'clock noon on Monday, December 14, 1903. No. 1. For mason, steel, iron, roofing, carpenter and electric work for the buildings of the College of the City of New York, to be erected," etc. Pursuant to this advertisement, three bids and proposals for doing the work were received by the building committee of said board of trustees on the 14th day of December, 1903, viz.: Thomas Dwyer, $1,625,000; V. J. Hedden & Sons' Co., $1,707,-267; J. R. Sheehan, $1,740,000. All of these bids were deposited in a sealed box labeled "Plumbing," and thereafter and before any of the bids were opened, the board of trustees and the committee upon buildings adjourned until the next day at 4:30 o'clock in the afternoon, at which time the committee and the board met, and the box containing the bids was opened, and the bids contained therein were examined.

Section 35 of the rules and regulations of the board of education of the city of New York, among other things, provides:

"(3) All proposals received by authority of the board of the executive committee for any of the purposes hereinbefore named shall be opened in the hall of the board immediately after the expiration of the time limited by the advertisement for the receipt thereof, by the officer advertising for the same, in the presence of the secretary of the board, or in the presence of such clerk as the secretary may designate; all proposals shall be thereafter filed in the office of the secretary, and no proposal shall be received or considered that may be offered or submitted after the time limited, as before specified."

Under the rules governing the bids, there was required to be attached to each bid a verified statement, made by the person or persons who intended to be a surety or sureties of the bidder, if the bid was let to his principal, that such sureties were worth a sum sufficient to entirely protect the city. Attached to Dwyer's bid was a statement purporting to be verified by two sureties, who are employés in Dwyer's office, that, in the event the contract was let to Dwyer, they would become his sureties; that they were freeholders residing in the city of New York, and that they would bind themselves for the faithful performance of the contract if let to the said Dwyer, and that they were worth the amount of the security required for the completion of the contract; that the amount for which they became sureties was $406,-250. While this statement was apparently verified by the sureties, as it was signed by them and a notary public, yet in fact the notary did not swear them thereto. The bid was also required to be signed and verified by the contractor bidding. Dwyer's bid purported to be so verified, was signed by him and by a notary public, but in fact his oath was never taken thereto. The proposed sureties were not freeholders, nor were they worth the sum therein stated. In all other respects

Dwyer's bid and the acts of the trustees were in compliance with the law. Dwyer deposited with his bid the sum of $22,000 at the time when it was made, to be sacrificed to the city to meet any damages it might sustain by reason of his failure to accept the contract, and to give surety for its faithful performance, as was required by law. It satisfactorily appears that Dwyer was a responsible contractor, and had performed many extensive contracts for the city to its satisfaction, and that he is of financial responsibility sufficient to enter into a contract with the trustees, furnish security therefor for its faithful performance, and meet every requirement which the law imposes in connection therewith.

It is evident from the conceded facts that there is no probability of waste of any of the city's funds if the contract with Dwyer shall be entered into. On the contrary, it clearly appears that his bid is lower by $82,267 than is that of his nearest competitor. A saving of this sum of money to the city makes any claim of waste upon the part of the plaintiff absurd in the extreme. The character of the controversy raises the suspicion, and some testimony is adduced to sustain it, that this is not a bona fide action at the instance of a taxpayer who is smarting under a sense of injury by a proposed waste of city funds, or of illegal acts to be perpetrated by public officials. It is quite likely that, if an investigation were made of the real nature of this controversy, it would not proceed far before coming in contact with an unsuccessful bidder for this contract, who may, if this action succeeds, be awarded the contract at a largely increased cost above a responsible contractor's bid. If we consider the merits, therefore, the present action does not commend itself as one brought by an outraged taxpayer to redress a public wrong.

It is claimed, however, by the appellant that this bid of Dwyer's is irregular, fraudulent, and void, and that, if the trustees recognize the same as a valid bid, and award a contract based thereon, such act would constitute an illegal, official act, and that he brings his case, therefore, squarely within the provisions of the statute, which authorizes its maintenance, and that upon the facts as they are made to appear in this record Dwyer's bid must be rejected. Four reasons are assigned for this conclusion: (1) That the bids were deposited in a wrong box, marked "Plumbing," instead of one marked "Mason and Steel"; (2) that the bids were not immediately opened; (3) that the sureties upon Dwyer's bond were not worth the amount therein stated; (4) that Dwyer and his sureties did not verify the affidavits, which they were required to verify. The first objection is trifling. It is not pretended that anybody was wronged, or could be, by depositing the bids in this box. The purpose sought to be accomplished was to keep the bids in a secure place. The box in which they were placed was sealed, and the bids themselves were protected from being tampered with as securely in that box as they would have been had the box bore another label. To hold the bid bad for this reason would reach an absurdity. The second objection is equally untenable. The provision in this respect is directory. The main purpose to be accomplished was that the bids should be opened speedily after the time had elapsed for their submission, and in the presence of the proper authorities. It preju-

diced no one by deferring the opening, as was done in this case. It was to bring the officers together who were charged with the duty of making the examination, and they being all present and acting within a reasonable time after the bids were deposited answers the substantial requirements of the provision. The substance of the matter is that they shall examine the bids within a reasonable time, and the officers charged with the duty must be present. People ex rel. Rodgers v. Coler, 35 App. Div. 401, 54 N. Y. Supp. 785. This was accomplished in the present case. As to the other objections, it is plain that there was an evident irregularity, and the act of the notary in attaching his signature to the affidavits without any oath of the affiants was reprehensible in the highest degree, and for such act he should be stripped of his office. Nor can the statements of the sureties as to their qualifications be justified; but, admitting these things, are the irregularities sufficient to call upon the trustees to reject this bid under the penalty of being guilty of an illegal, official act if they act upon it? That it is to the pecuniary advantage of the city so to act is undisputed, and the city ought not to be deprived of the right thus presented to make an advantageous contract, unless a controlling rule of law interposes to compel it. All of the provisions, both of the statute and of the rules and regulations which have been adopted for procuring genuine bids and responsible parties, are in the main for the benefit of the city, and in order to prevent frauds upon it. They have not been adopted for the protection of the bidder, but for the protection of the city, and it necessarily follows that the city, to some extent, at least, has the right to waive irregularities when it is clearly for its benefit so to do, and when no damages will be inflicted upon it, or wrong done to others thereby. In the present case there is no claim that there was any collusion or fraud between the bidder and the city or those advertising for bids. The fraud which is averred to exist is such as arises out of the transaction itself, and it comes into being by operation of law, if at all. There is no pretense that any fraud or collusion existed as matter of fact, and, such being the case, it would seem to follow that no one can be injured by the trustees acting upon this bid and executing the contract. A precisely similar question in principle arose in the case of Boyle v. Grant (Sup.) 12 N. Y. Supp. 801. Therein the General Term of this court held that the city was not debarred from entering into a contract by reason of such infirmity in the bid. Undoubtedly, the city would have the right to reject the bid, and refuse to enter into a contract based upon it; but such question, in the absence of any actual fraud or collusion, and where there will be no waste of the public funds, is between the bidder and the city; and, unless there is a violation of some essential principle of law, or a wrong will be committed against the city, we see no reason why the trustees should not be permitted to contract. The city has the ability to entirely and fully protect itself in the contract which it makes. It is required to be fully indemnified by sureties, responsible for the fulfillment of the contract with integrity. There is not a point at which the city is left vulnerable when the contract is properly executed and the attendant indemnity is given. Under such circumstances we do not think it can be said that the trustees, charged with the duty of carrying out the

provisions of this statute and contracting upon behalf of the city, can be said in a legal sense to be guilty of an illegal act in executing such a contract, while upon the merits there is the highest reason why the acceptance of the bid should be permitted. The discussion in the case to which we have called attention answers fully and completely every question which has been raised and argued in this respect. See, also, Paul v. City of New York, 46 App. Div. 69, 61 N. Y. Supp. 570; North River Electric Co. v. New York, 48 App. Div. 14, 62 N. Y. Supp. 726; Matter of Clamp, 33 Misc. Rep. 250, 68 N. Y. Supp. 345. There is a class of cases of which McDonald v. Mayor, 68 N. Y. 23, 23 Am. Rep. 144, and People ex rel. Rodgers v. Coler, 35 App. Div. 401, 54 N. Y. Supp. 785, are representative, in which courts have denied relief at the instance of individuals who were seeking to enforce some right against the city which was defeated by reason of irregularity found in the bids, or of some act of an officer connected therewith or in the contract, or in the exercise of power upon the part of the city officers. We think the principle announced in those cases is without application to the present. In all of them the defect was of a character which the party proposing to bid and contract was bound to take notice of, both as to the irregularity of the proceeding and the authority of the city to execute the particular contract or create particular obligations. These cases are well decided, and we do not question the doctrine contained therein. The question is quite different where the power is involved of the city, or its agents, to waive a regulation which has been made for its protection, unless it be shown that by such act of waiver the city will be defrauded, or otherwise suffer damage, or some other person will be wronged. It would be most unfortunate if it be held that rules of law and regulations confessedly made for the protection of the city could be invoked to deprive it of the right to make a contract in all respects beneficial to it, and where every right may be protected, and impose upon it the burden of paying large sums beyond that which it would be obligated to pay under the contract which it proposes to make. We think no rule of law interposes to prevent the trustees from acting upon this bid and making this contract. Whatever be the questions involved, they are such as arise between the contractor and the city, and, as no wrong is done, or can be, this plaintiff is not interested therein.

It follows that the order should be affirmed, with $10 costs and disbursements.

VAN BRUNT, P. J., and INGRAHAM and McLAUGHLIN, JJ., concur. LAUGHLIN, J., concurs in result.