Richard D. Simons, J.
Petitioners bring this proceeding pursuant to article 78 of the Civil Practice Law and Rules to review the determination of the respondent members of the Board of Contract and Supply of the City of TJ-tica, New York, made January 20, 1964, rejecting the two bids which had been submitted to supply garbage collection service for the City of Utica. Petitioners were the low bidder and contend that the rejection of their bid and the board’s decision to readvertise was arbitrary and capricious and an abuse of discretion by the respondents. It is the contention of the respondents that the petitioners did not meet the specifications as advertised insofar as petitioners did not submit an adequate financial statement as required. In any event, the respondents contend they were vested with the authority to reject all bids and readvertise the contract for the purpose of avoiding litigation and obtaining lower bids.
Petitioners are partners engaged in collecting and disposing of garbage and trash. At the time of bidding and since 1961, they have been performing garbage collection service for the City of Utica under a contract which expired January 31, 1964. Since that contract expired without the awarding of a new contract, petitioners have been engaged on a month to month basis by the City of Utica until new bids are received.
During the month of December, 1963 respondents published legal advertisements requesting sealed bids for the collection *861 of garbage, ashes and other refuse of the City of Utica, New York, for the period February 1, 1964 and ending January 31, 1967. Bids were received January 3, 1964 and respondents reserved to themselves the right to reject “ any bids that are incomplete, conditional, obscure, or which contain irregularities of any kind, including unbalanced bids, and any and all bids not deemed for the best interest of the City.” Included in the specifications was the requirement that the bidders submit a detailed current financial statement. The petitioners submitted their bid and upon the opening, it was learned that they were lower than the one other bid received by approximately $3,600 per year. Included in their bid were statements shown on Exhibits A and B of respondents’ answer showing the members of the partnership, the ownership percentage of each and stating that the net worth of the partnership was $150,000 and that there were no outstanding liabilities. They also listed their equipment and stated that they maintained a $15,000 minimum bank balance and that they had an account receivable from the City of Utica in the amount of $26,900 due under the current garbage contract. Petitioners submitted a $25,000 surety bid bond. After canvassing the bids, the City Engineer and the Commissioner of Public Works reported that the petitioners were the low bidders but raised the question of the adequacy of their financial statement. On January 10, 1964 before the respondents met in formal meeting, at the request of respondents, the petitioners supplied an additional statement which was satisfactory. After some discussion, the meeting to award the bid was postponed until January 20,1964 to consider the matter. At the January 20 meeting, it was determined to reject all bids based upon the opinion of the Corporation Counsel that there was a legal question as to the validity of the bid of petitioners, that it would cost $3,600 per year more to award the bid to the second low bidder, that if the bid was awarded to petitioners, the bid price was more than the existing contract, that by rejecting and readvertising bids, litigation could be avoided and, in all probability, readvertisement would result in a lower bid price. There is no question of the financial sufficiency of petitioners, and the respondents’ main concern was the method by which that information was supplied.
No question was or is raised as to the ability of the petitioners to perform the services required. In fact, there are included in the petitioners’ brief, photo copies of letters from the Mayor and Commissioner of Public Works of Utica commending the petitioners for the ‘ ‘ wonderful job ” they were doing under the 1961 contract.
*862 Upon rejection of the bids, petitioners brought this proceeding by order to show cause to determine their rights.
Section 7803 (subd. 3) of the Civil Practice Law and Buies provides that questions may be raised under article 78 as to whether a ‘ ‘ determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion”. The italicized portion was not part of the former Civil Practice Act but was added in the Civil Practice Law and Buies. It is a legislative enactment of what has long been the case law of this State.
In deciding whether a determination is arbitrary or capricious or an abuse of discretion, the test is not what the court thinks or what the board should have done but whether or not there is a responsible or plausible basis for their actions. (Matter of Kaelber, 281 App. Div. 980.) When there is no substantial evidence to justify the decision of the board, then the court is warranted in setting it aside. (Matter of Reynolds v. Triborough Bridge & Tunnel Auth., 276 App. Div. 388.)
In the instant case, the duty imposed on the respondents was to let this contract to the lowest responsible bidder furnishing the required security. (Second Class Cities Law, § 120; General Municipal Law, § 103.) Implicit in determining the lowest responsible bidder is the exercise of administrative discretion; otherwise, public officials are reduced to merely making arithmetical computations to determine the lowest dollar amount. (Matter of Limitone v. Galgano, 21 Misc 2d 376.) That the petitioners are the lowest dollar bidder is unquestioned. The matter for determination is whether or not respondents abused their discretion in failing to award them the contract.
It appears to the court that respondents have abused that discretion.
Petitioners have been denied their contract because of their alleged failure to comply with the specifications requiring a showing of financial responsibility. Unquestionably, it is within the power of the city to insist on literal compliance with the specifications. (Matter of Marsh, 83 N. Y. 431; Matter of Rockland Haulage v. Village of Upper Nyack, 13 A D 2d 819.) Also, the respondents had the undoubted right to waive a technical noncompliance with the specifications if that defect was a mere irregularity and it was in the best interest of the city to waive it. (McCord v. Lauterbach, 91 App. Div. 315; Nowak Constr. Co. v. Suffolk County, 233 N. Y. S. 2d 627.)
It is beyond dispute that the requirement of a financial statement is a legitimate specification to aid the public body in awarding the contract because it serves the salutary purpose of *863 revealing the financial resources and means the contractor has to complete the work.
The weakness of the respondents’ position is that there is not now and apparently never has been any question as to the financial responsibility of the petitioners, or for that matter, any question as to .their competency. The respondents have never made any determination that the petitioners were not responsible. Their sole concern was whether or not a specification had been met, the omission of which was at most an irregularity. The subsequent conduct of the City Engineer and the board allowed the petitioners to supply additional information which met the specifications completely merely so that the form of supposed legitimacy could be maintained. After doing this, the respondents then arbitrarily rejected all bids.
The respondents should have been concerned with the content and not the form of the information supplied. The insistence that this financial data comply 100% with the form desired by the board at the time of opening the bids served only to frustrate the fundamental purpose of the bid law of this State because it allowed the respondents to insist on absolute literal compliance with the specifications for the purpose of rejecting the bid when they had before them sufficient information to make the required determination.
It is not necessary to determine whether the respondents’ actions constituted a waiver of this specification for the court finds that the petitioners substantially complied with it. (Herrick Elect. Contr. Co. v. County of Suffolk, 6 Misc 2d 886.) At the time the bids were opened on January 3, the respondents had within their knowledge the experience of three years of service by the petitioners under a similar contract, they knew the equipment petitioners possessed and that it was sufficient for the work required, petitioners had a substantial bank balance, were responsible enough to obtain a $25,000 surety bid bond, had assets valued at book value of $150,000 with no liabilities and the City of Utica itself owed petitioners almost $30,000 at the time of the bid. It is difficult to imagine what greater proof a public body might wish as to the financial responsibility of their bidders and, indeed, many public bodies have let contracts with less assurance or knowledge of the contracting party.
Nor can respondents prevail in this proceeding with the argument that the bid was rejected to avoid litigation and in the hope of obtaining lower prices.
As to the argument respondents’ actions were governed by a desire to avoid litigation, suffice it to say, that the respondents have learned to their sorrow that litigation can result from the *864 rejection of bids as readily as it can from the acceptance of them.
As to the argument that readvertisement would result in lower bids and a financial saving to the city, this is entirely speculative and the court cannot approve the rejection on that ground. In fact, it is not in any way clear that the bid price was high. While the figures do not appear in the moving papers, it was conceded on oral argument that the total price for this three-year contract was between $250,000 and $275,000 and that the bid submitted on January 3, 1964 was approximately $16,000 higher than the cost for the three-year term commencing in 1961. This is partly explained by the fact that the area to be serviced was substantially greater in 1964. With the normal course of inflation, the expectancy that lower bids might have resulted after readvertisement, seems to be wishful thinking in the extreme. There is no allegation in the moving papers that the bid was excessively high.
But further than this, to sanction readvertisement under the circumstances as they exist in this case, would be to authorize a pernicious practice, the long-range effect of which could only be detrimental to the best interests of the municipality. While the intention of the respondents to seek the lowest possible bid is commendable, continued readvertisement can only result in limiting the number of prospective contractors willing to expend the cost and energy necessary for submitting bids when they have no assurance of being awarded the contract even if they are the low bidder. Such a procedure also exposes the secret bid price to other potential bidders and may provide the means whereby a future municipal government can use this power of rejection to award contracts to persons of their choice. This practice has been condemned by the courts of this State. (Arensmeyer, Warnock, Zandt v. Wray, 118 Misc. 619.)
The respondents are required to award the contract to the petitioners pursuant to the bid submitted by petitioners on January 3, 1964 and the respondents are further restrained from advertising for further bids.