George H. Vinette, J.
This is an application, pursuant to CPLB, article 78, seeking to restrain the respondent City of Syracuse from awarding a contract to O’Brien Construction Co., Inc., for the reconstruction of a burned-out portion of the stands and facilities of the city-owned athletic field, MacArthur Stadium. The petitioner, A. J. Beaudette Construction Co., Inc., also asks that it be awarded the contract in question.
The facts as they have been presented in the papers and in the oral argument are not in dispute.
The baseball stadium located in, and owned by, the City of Syracuse was extensively damaged by a fire on May 15, 1969. This stadium is the home playing field of the Syracuse Chiefs baseball team. From what has appeared on the argument, the future of organized professional baseball in Syracuse depends on the rebuilding of the stadium in time for the opening of the 1970 season in April. On May 26, 1969, the City of Syracuse appropriated $55,000 to demolish the fire-damaged stands and to permit the use of a portion thereof for the balance of the 1969 season.
From May until October 14,1969, the City of Syracuse investigated and studied the problem of what to do with the stadium. Finally an appropriation of up to $314,823.29 was authorized by the Common Council. The city circulated an invitation to bid the job pursuant to plans and specifications. The opening of sealed bids was set for January 8, 1970, at 2:00 p.m. The notice stated “ each Bidder shall sign and execute as part of his bid the non-collusive Bidding Certification bound herein with Bid Forms.”
The notice also states that “ The Commissioner of Purchase reserves the right to reject any and all Bids not deemed for the best interests of the City, and to reject as informal, such Bids as, in his opinion, are incomplete, conditional, obscure, or which contain irregularities of any kind including unbalanced Bids.” It should be noted here that the power of rejection is based on what is in the best interests of the City of Syracuse.
At the time of the bid openings, it was announced that O’Brien was the low bidder with a bid of $266,688. The petitioner was next low bidder at $285,000. It was also noted that the O ’Brien bid did not contain an executed noneollusive certification. The *566 certification was executed after an O’Brien Construction Co., Inc., officer explained that the failure to execute the noncollusive certification was due to inadvertence. On January 12, 1970, a letter was directed to O’Brien Construction Co., Inc., informing that theirs was the lowest bid and awarding them the contract. Petitioner objects to such award and claims that the contract should be voided and the award made to petitioner.
A noncollusive certificate is required under the provisions of section 103-d of the General Municipal Law. This section is part of article 5-A of such law. The same article contains a declaration of its policy found in section 100-a, which directs that the article be construed in such a manner “ as to assure the prudent and economical use of public moneys for the benefit of all the inhabitants of the state and to facilitate the acquisition of facilities and commodities of maximum quality at the lowest possible cost.”
The combined cost of the petitioner’s bid, plus the other contracts involved, brings the total price to over the authorized $314,823.29. This bid could rightly be rejected by the Commissioner of Purchase in his sole discretion. Other objections to petitioner’s bid have been raised, but need not be considered in this proceeding. The O’Brien bid is the only one that came within the total cost authorized by the Common Council.
There have been no objections to the bid of O’Brien except for the failure to execute the certification prior to the opening of the bids. Petitioner urges that the court should not concern itself with question of intent, public need, or the lack of any showing of collusion or any other illegality or irregularity. We are urged that a saving of $19,000 and the possible loss of the baseball franchise for the City of Syracuse are less important than the date of the signing of the certification. We are urged to base our decision on this application on what is, simply stated, a technical irregularity, if an irregularity at all.
It is impossible for this court to operate in a sterile vacuum of technicalities completely separated from the needs of the people. Justice requires a court to balance all of the interests involved in a situation and to do what it considers to be equitable. The irregularity urged by petitioner is, legally speaking, 11 de minimis ”.
That the defect can be cured is pointed out by Mr. Justice Robert J. Main in the case of McConnville, Inc. v. City of Ogdensburg (1967). Justice Main rightly states that while the defect can be cured, it is not good practice to permit such proce *567 dure as a regular matter. This court fully agrees. The decision herein is limited to the exact fact situation presented by the papers herein.
The petition is denied.
Submit order accordingly.