Henry A. Hudson, J.
The petitioner instituted this article 78 proceeding by order to show cause to annul the rejection of its low bid of $386,268 for the heating, ventilating and air conditioning required for the construction of the new Watertown Elementary School and to direct respondent, sometimes hereinafter referred to as the Board, to award such contract to it as the lowest responsible bidder. A stay was granted by Hon. Richard J. Cardamons, restraining respondent from awarding the contract in question to any other bidder pending the determination of this proceeding.
The respondent advertised for sealed bids for the work in question, to be opened December 23, 1969, the contract to be let to the lowest responsible bidder. The bids were opened by the architect for the Board in the presence of the president of the Board and its attorney. Petitioner’s bid was announced as the low bid, the second lowest bid being that of the J & K Boiler Works of Oswego, N. Y., in the sum of $388,600. It was announced that no action would be taken until the next Board meeting on January 5, 1970. The architect called petitioner’s *447 attention to the lack of the noncollusive bid certification, hereinafter referred to as certificate, required by section 103-d of the General Municipal Law required under the specifications and stated that it should be supplied as soon as possible. It was submitted on the following day and accepted by the architect. Within a few days the second lowest bidder advised the respondent that petitioner’s hid was improper and insufficient without the certificate required by said section 103-d and must be rejected and their hid should he accepted as the resulting low bid. When the Board met on January 5, 1970 they rejected petitioner’s bid solely on the ground that it was incomplete and not in accordance with law or the architects’ specifications in that ,said hid did not contain the certificate required by section 103-d of the General Municipal Law and voted to accept the second low hid.
No answer was submitted on behalf of the respondent. Counsel for the Board submitted an affidavit setting forth the factual circumstances substantially as hereinafter set forth and attached a copy of the resolution of the Board rejecting petitioner’s bid. It was indicated to the court on the argument of the motion that counsel did not consider that there was any material dispute as to the facts involved in the present controversy, and that only a question of law was involved. The petitioner called the attention of the court to the decision of Hon. George H. Vinette, Justice of the Supreme Court, in the Matter of Beaudette Constr. Co. v. City of Syracuse (62 Misc 2d 564), and the decision of Hon. Robert F. Main, Justice of the Supreme Court, in Matter of McConville, Inc. v. City of Ogdensburg. Both of these decisions, they urge, support their position. The respondent called the attention of the court to the decision of Hon. Donald H. Mead, Justice of the Supreme Court, in Matter of Manson Constr. v. City of Oswego, dated October 13, 1969, which they urge, supports their position. The court’s attention was also called to decisions of the Commissioner of Education in Matter of Richards v. Board of Educ. (5 N. Y. Educ. Dept. Rep. 112) and Matter of Kewanee Tech. Furniture Co. v. Board of Educ. (5 N. Y. Educ. Dept. Rep. 96) and the Opinions of the Comptroller identified as Opinions 68-189 and 68-702, dated March 20 and • October 11, 1968, respectively, which the respondent urges supports its position.
The court was advised that by reason of the apparent conflict in the interpretation of section 103-d of the General Municipal Law in the above opinions, that an appeal from the court’s decision would he necessary regardless of the outcome and that it *448 was the hope of the parties that a decision could be forthcoming so that application could be made to argue the appeal jointly with the argument of an appeal from the decision of Justice Vinette (supra) which was presently before the Appellate Division. The court has since been advised that such appeal has already been argued but that no decision will be handed down until at least March 30,1970. *
I do not feel that there is any disputed question of fact which would require a trial as required by CPLR 7804 (subd. [h]). (Matter of Carucci v. Dulan, 24 A D 2d 529.)
Briefly stated the material facts are: The Board of Education of the City of Watertown, N. Y. advertised for bids for the heating, ventilating and air conditioning together with bids for all other work required for the construction of the Watertown Elementary School. The sealed bids were to be publicly opened on December 23, 1969, at the office of the Board at 8:00 p.m. The specifications required that the certificate required by section 103-d of the General Municipal-Law should be ¡submitted with the bid. The bids for heating, ventilating and air conditioning were opened on schedule. The architect, the Board president and the attorney for the Board were present. There were 10 bids submitted. Two of the bids including petitioner’s did not contain the certificate. The petitioner’s bid was the low bid. The results of the bidding were announced and it was also announced that no action would be taken on the bids until the meeting of the Board, which would not be held until January 5,1970. The architect for the Board, who was in charge of the opening and recording of the bids, advised the petitioner that he should submit the certificate as soon .as possible. The petitioner submitted such a certificate the following day, December 24, 1969. Within a few days the second lowest bidder J & K Boiler Co., Inc., of Oswego, advised the Board of Education by telephone and by letter that the petitioner’s bid could not be accepted because of the failure of petitioner to submit the certificate as a part of his sealed bid and insisted that their bid be accepted and the petitioner’s rejected. The Board met on January 5, 1970 and took petitioner’s bid under consideration and by formal resolution rejected the same solely for the reason that it had not contained the certificate at the time that the bid was opened with the declaration; that the bid was incomplete and not in accordance with law or the architectural specifications in that said bid did not contain the certificate required by section 103-d of *449 the General Municipal Law and accepted, subject to final approval of the plans, the bid of the J & K Boiler Co., Inc., of Oswego.
Upon the argument of the motion, the court’s attention was called to the fact that the decision in Matter of Manson Constr. Co. v. City of Oswego was partially based upon the fact that the successful bidder in such action had not been made a party to the proceeding, citing Matter of Castone Bros. v. Solowinski (276 App. Div. 970) and it was suggested that the J & K Boiler Co., Inc., of Oswego should have been made a party to the proceeding. The court advised counsel that it would sign an order directing the J & K Boiler Co., Inc., of Oswego to show cause why they should not be joined as a party to this proceeding. This procedure was followed and on the following Monday, the J & K Boiler Co., Inc., of Oswego appeared and opposed the application. The court overruled their objection, and directed that they be joined as a party to the proceeding. They then opposed the application on the .same grounds as respondent.
The provisions for the letting of public contracts are contained in article 5-A Public Contracts of the General Municipal Law.
‘ ‘ § 100. Definitions. As used in this article:
“ 1. [1] Political subdivision ’ means * * * school district
“ § 100-a. Declaration of policy. It is hereby declared to be the policy of this state that this article shall be construed in the negotiation of contracts for public works and public purchases to which political subdivisions or and[1] district therein is a party so as to assure the prudent and economical use of public moneys for the benefit of all the inhabitants of the state and to facilitate the acquisition of facilities and commodities of maximum quality at the lowest possible cost.” ■
Section 103 provides for the advertising for bids and the letting of contracts.
Subdivision 1. “ Except as otherwise expressly provided * * * all contracts for public work involving an expenditure of more than twenty-five hundred dollars * * * shall be awarded * * * to the lowest responsible bidder furnishing the required security after advertisement for sealed bids in the manner provided by this section.”
Subdivision 2. ‘ ‘ Advertisement for bids shall be published * * * such advertisement shall contain a statement of the time when and place where all bids received pursuant to such *450 notice will be publicly opened and read. Such board or agency may by resolution designate any officer or employee to open the bids at the time and place specified in the notice. Such designee .shall make a record of such bids * * * and present the same at the next regular or special meeting of such board or agency. All bids received shall be publicly opened and read at the time and place so specified.”
Section 103-d- — -'Statement of noncollusion in bids and proposals to political subdivision of the State.
[1] ‘ Every bid or proposal hereafter made to a political subdivision * * * where competitive bidding is required by statute * * * shall contain the following -statement subscribed by the bidder and affirmed by such bidder as true under penalties of perjury; Non-collusive bidding certification.
“ (a) By submission of this bid, each bidder and each person signing on behalf of any bidder certifies, and in the case of a joint bid each party thereto certifies as to its own organization, under penalty of perjury, that to the best of knowledge and belief:
“ (1) The prices in this bid have been arrived at independently without collusion, consultation, communication, or agreement, for the purpose of restricting competition, as to any matter relating to such prices with any other bidder or with any competitor ;
“ (2) Unless otherwise required by law, the prices which have been quoted in -this bid have not been knowingly disclosed by the bidder and will not knowingly be disclosed by the bidder prior to opening, directly or indirectly, to any other bidder or to any competitor; and
“ (3) No attempt has been made or will be made by the bidder to induce any other person, partnership or corporation to ¡submit or not to submit a bid for the purpose of restricting competition.”
“ (b) A bid shall not be considered for award nor shall any award be made where (a) (1) (2) and (3) above have not been complied with; * * *
‘ ‘ 2. Any bid hereafter made to any political subdivision of the state or any public department, agency or official thereof by a corporate bidder for work or services performed or to be performed or goods sold or to be sold, where competitive bidding is required by statute, rule, regulation, or local law, and where such bid contains the certification referred to in subdivision one of this section, .shall be deemed to have been authorized by the board of directors of the bidder, and such authorization shall be deemed to include the signing and submission of the *451 bid and the inclusion therein of the certificate as to non-collusion as the act and deed of the corporation.”
The Board was required by section 103 (subd. 1) to award the contract for the work in question to the lowest responsible bidder furnishing the required security after advertising for sealed bids as required in section 103 (subd. 2).
The Board advertised for bids pursuant to specifications prepared by its architect. It is conceded that the Board’s general practice was to have such bids opened by the architect at the time specified and to have the bids recorded by him and presented to them at their next regular meeting. The specifications contained the following provision:
“ 3. NON-COLLUSIVE BIDDING CERTIFICATE
“ A. Each prime bidder submitting a bid for any portion of the work contemplated by the bidding documents shall execute a certificate in the form herein provided, to the effect that he has not colluded with any other person, firm or corporation in regard to any bid submitted. Such certificate shall be attached to the bid. Failure of any bidder to abide by this provision shall be cause for rejection of his bid.”
A proposed form of certificate was provided intended to comply with the requirements of section 103-d {supra). It should be noted in passing that the form submitted did not comply with the requirements of section 103-d as amended, effective September 1, 1966, but rather seems to contain the requirements of the statute as it existed before the amendment.
The provisions of .section 103-d .in respect to the furnishing of the certificate do not state that it must be submitted with the sealed bids. It reads: 1 ‘ Every bid or proposal hereafter made to a political subdivision # * where competitive bidding is required by statute * * * shall contain the following statement ”.
The petitioner urges that this section has been complied with for the reason that its bid, when submitted to the Board on January 5,1970, did contain the required certificate. Petitioner asserts that the architect was the agent of the Board of Education when he prepared the specifications. and included therein a proposed form of the certificate required by section 103-d; that he was acting as the agent of the Board in opening the sealed bids as provided for in section 103 (subd. 2) and that inasmuch as section 103-d did not specifically require the certificate to be submitted with the sealed bids, that the architect was within his authority in granting petitioner the privilege of supplying the certificate on the following day and in accepting it. The petitioner contends that as long as he did not gain *452 any unfair or undue advantage by submitting the certificate the following day; that none of the rights of other bidders were jeopardized by reason thereof and that the purposes of section 103 (subd. 7) and 103-d were satisfied, there was every reason for the architect to permit the correction because the best interests of the Board would be served as intended by section 100-a and the Board would be enabled to consider the low bid and award the low bidder a contract.
In determining whether the rights of any interested party would be jeopardized, it is necessary to consider the purpose of the certificate and what the Legislature intended by requiring it. It is provided for because of the provisions of section 103 (subd. 7) which relate to criminal conspiracy and prohibits collusion between bidders for work on public improvements. Every bidder is required to certify that none of the acts specified in the provisions of section 103-d (a), (1), (2), and (3), have been engaged in by the bidder prior to the opening of the bids and the certification is given under penalty of perjury. It is difficult to envisage any advantage a prospective bidder could obtain by waiting until the sealed bids were opened before submitting the certificate or in what manner an unsuccessful bidder could be injured by the failure of the low bidder to submit the certificate as a part of his sealed bid except the technical objection that the certificate was not timely filed.
In Matter of McConville, Inc. v. City of Ogdensburg (supra) Justice Main, although not deciding the issue upon that ground, stated: “ In view of the foregoing it is unnecessary to dwell upon the failure of the bid to include a non-collusive statement in compliance with Section 103-d of the General Municipal Law except to say that the defect was cured by the supplying of such a statement by Sheehan Bros., Inc., prior to the acceptance of its bid by the City. This, however, is not good practice and in the future such a statement should accompany each bid.”
In the Matter of Beaudette Constr. Co. v. City of Syracuse (supra) Justice Vinette cited the McConville decision with approval and stated, while it was not good practice, it was in no way fatal.
In Matter of Rockland Bus Lines v. Board of Educ. (43 Misc 2d 1060) the court held that the statutory requirement of section 103 (subd. 1) that the contract be awarded to the lowest responsible bidder furnishing the required security after advertisement for sealed bids did not require the furnishing of the required security simultaneously with the submission of the sealed bid. The court observed that the Board had merely *453 waived its own requirement in the advertisement for bid but had not waived the necessity of the furnishing of security. In that case, the court observed, “ such a waiver was not the soundest practice but observed that nevertheless the contrary is not specifically enjoined by law.”
In Matter of Carucci v. Dulan (41 Misc 2d 859, revd. on other grounds, 24 A D 2d 529) Justice Simons held that the action of the City of Utica in permitting the low bidder to submit an additional financial statement before the Board of Contract and Supply formally met to act on the acceptance of the bid was within their power. In that case the bidding specification required the filing of a financial statement with the bid and the bidder did supply one, which the city officials, upon opening the bids, felt was inadequate. The contractor was permitted to submit a supplemental financial statement. In reversing the Special Term, the Appellate Division held there was a question of fact and that proof must be taken to establish that the Board’s action was proper under the given circumstances. This would seem to indicate that if the Board’s action was justified under the circumstances, it would have authority to allow the supplemental statement to be submitted.
The decision of Justice Mead in Manson Constr. Co. v. City of Oswego (supra) was based on two grounds, one the failure to include the low bidder as a party. In the present case the court has overcome this objection by bringing in the second low bidder as a party. The other, that section 103-d must be strictly construed to mean that by the language, ‘1 Every bid * * * shall contain * * * [a] Non-collusive bidding certification ’ ’, the Legislature intended that the certificate must be included as a part of the sealed bid. The court held the word “ shall ” to be mandatory. I do not disagree that “ shall ” is mandatory but am of the opinion, that it only should be interpreted to mean that the certificate shall be included with the bid before it can be taken up for consideration or can be acted upon by the Board. (§ 103-d [b].) Justice Mead also indicated that the change in section 103-d by the 1965 amendment requiring that the certification be included with the bid and proposal, instead of in the contract, is indicative of the legislative intent that a bidder furnish the certification with his sealed bid. Obviously the certificate could be furnished any time before the contract was signed if it had not been furnished in the first instance. Is it not as reasonable to permit an inadvertent omission to be rectified at any time before the bid is taken up for consideration. Obviously it is not good *454 practice to follow such procedure and it should not be encouraged but in my opinion it is not forbidden or prohibited by section 103-d (1) and is proper under section 103-d (b).
(Matter of McConville, v. City of Ogdensburg, supra; Matter of Beaudette Constr. Co. v. City of Syracuse, 62 Misc 2d 564, supra, affd. 34 A D 2d 734; Matter of Rockland Bus Lines v. Board of Educ., 43 Misc 2d 1060, 1062, where the court stated: “ The waiver may or may not have been the soundest action under the circumstances. Nevertheless the contrary is not specifically enjoined by law.”)
If there were grounds to believe the low bidder had intentionally omitted the certification either for his own advantage or for the disadvantage of competing bidders, or if some peculiar circumstances required it, the Board could refuse relief but if the mistake occurred through inadvertence or mistake, mutual or otherwise, with no material advantage to the low bidder and no material disadvantage to other bidders, the Board would be acting in the best interests of its citizens; carrying out the intent of section 100-a; and complying with the statutory requirement of section 103 (subd. 1) of accepting the lowest bid by permitting the correction.
(Matter of Glen Truck Sales & Service v. Sirignano, 31 Misc 2d 1027, 1030, where the court stated: 1 £ Accepting the facts pleaded in the petition as true, as the court must on a motion to dismiss, the question presented is whether the Board was empowered in the exercise of discretion to allow Atlas to supplement its bid after all bids had been opened. In its original bid the Atlas bid did not conform to specifications, since the description furnished by it stated a tonnage less than the specifications required. It is the general rule that a bid for a public contract must comply with the conditions of the bidding (ann., 65 A. L. R. 835, 836). This general rule is subject, however, to the refinement that a variance may be waived by the public body, if not material (10 McQuillin, Municipal Corporations [3d ed.], § 29.68, p. 339). £ The test of whether a variance is material is whether it gives a bidder a substantial advantage or benefit not enjoyed by other bidders.’ (1 Antieau, Municipal Corporation Law, § 10.11, p. 699; see, also, National Eng. & Contr. Co. v. City of Cleveland, 70 Ohio Law Abst. 303.) ”.)
The court then points out the basic purpose of such statutes: £ 1 The aim of the City Charter, and of statutes generally which regulate the award of public contracts by bidding, is to obtain the lowest price for the work or object under consideration,”
*455 The court further observed, however, that if some material advantage to a bidder would occur by permitting a correction in a bid, it should not be allowed.
In the present case I can see no way in which the low bidder gained any material advantage through filing the certificate on the following day or that the second low bidder, or any other bidder for that matter sustained material injury or damage. The mere failure of the second low bidder to become the low bidder because the low bidder was allowed to supply the missing certificate on the following day is not, in my opinion, such a material disadvantage.
In the present case the specifications required the certificate to be furnished with the sealed bid. The specifications were prepared by the architects who acted for the Board in opening and recording the bids. The architect could have rejected the bid as not complying with the specifications and thus being insufficient and informal.
(Matter of Marsh, 83 N. Y. 431; McCord v. Lauterbach, 91 App. Div. 315, 320; Matter of Rockland Haulage v. Village of Upper Nyack, 13 A D 2d 819.)
However, the architect did not do so. His action, in opening the bids, recording the petitioner’s bid as the low bid, stating that no action would be taken on the bid until January 5, 1970, advising petitioner that it had failed to include the certificate and suggesting that it do so promptly, the filing of the certificate the following day and its acceptance then by the architect, in my opinion, constitutes a waiver of the requirement in the specifications. The architect in handling the opening of the bids under the circumstances was acting as the agent of the Board with authority to act for them. This is particularly true when both the president of the Board and its attorney were also present.
The architect had the right to waive a technical noncompliance with the specifications if that defect was an irregularity and did not materially affect the right of any of the bidders and if it was in the best interest of the School Board to waive it.
(General Municipal Law, § 100-a; McCord v. Lauterbach, 91 App. Div. 315, 320, supra, wherein the court stated: e e All of the provisions, both of the statute and of the rules and regulations which have been adopted for procuring genuine bids and responsible parties, are in the main for the benefit of the city and in order to prevent frauds upon it. They have not been adopted for the protection of the bidder, but for the protection of the city, and it necessarily follows that the city, to some extent, at least, has the right to waive irregularities when *456 it is clearly for its benefit so to do and when no damages will be inflicted upon it or wrong done to others thereby.”)
(Nowak Constr. Co. v. County of Suffolk, 233 N. Y. S. 2d 627, 628; Matter of Carucci v. Dulan, supra.)
Prior to the amendment of section 103-d (subd. 2) effective September 1, 1966, much confusion prevailed as to the sufficiency of corporate action authorizing the execution of the certificate. The amendment eliminated all technical requirements to establish authority for signing, the effect of signing, and authority to submit the certificate. To me this is indicative of a legislative intent to eliminate the necessity of a very strict and technical interpretation of what constitutes a proper filing under section 103-d which had previously been the subject of confusion.
The court is aware of the difficult problem with which the respondent is confronted.
If the strict constructionist interpretation is the correct one, that section 103-d requires the filing of the certificate with the sealed bid and that the failure to comply cannot be waived by the Board, it was correct in rejecting petitioner’s bid and if the second low bidder had filed a proper certificate, it would be entitled to be awarded the contract. The form used by the second low and other bidders is not before the court on this application. If it followed the form suggested in the specifications, as seems likely, under the strict constructionist interpretation, it would not comply with the form set forth in and required by section 103-d as amended in 1966 as it could not be corrected after the opening of the bid and the bids would be insufficient. The Department of Education decisions (5 N. Y. Educ. Dept. Rept. 96, 112) involved bids none of which contained the certificate required by section 103-d. The question of one being subsequently supplied or corrected was not before the Commissioner. He held, however that the certificate must be a part of the sealed bid. In both cases a rejection of all bids and a readvertising was ordered.
If the liberal interpretation is the correct one, the controversy can be readily resolved. The action of the architect in allowing the low bidder to file its certificate could be approved, a form of certificate complying with the statutory requirement of section 103-d could be supplied before the bid was acted upon, the contract could be let to the low bidder, which is a strict statutory requirement, there would be no delay and no bidder would be materially prejudiced. If the Board felt it might be subjected to litigation which would delay the construction of the school, it could reject all bids and readvertise.
*457 In the present case the second low bidder had a legal remedy if it felt injured. Instead it elected to communicate to the Board what in effect was a threat of litigation if it were not declared the low bidder.
As Justice Simons observed in Matter of Carucci v. Dulan (41 Misc 2d 859, supra) at pages 863-864: “ As to the argument respondents’ actions were governed by a desire to avoid litigation, suffice it to say, that the respondents have learned to their sorrow that litigation can result from the rejection of bids as readily as it can from the acceptance of them.”
The present controversy is limited to the question of whether the statute requires the presentation of the certificate with the sealed bid. I believe that the legislative intent in enacting section 103-d, as amended, was to require the certificate to constitute a part of the bid before it could be taken up and acted upon by a municipality and that the omission of the certificate could be supplied in the discretion of the municipality as long as no prejudice to any other bidder resulted and no advantage was gained by the correcting bidder. The practice should not be encouraged and the certificate should as a general rule be supplied as a part of the original bid. As the specifications required specifically that the certificate be submitted with the bid, the architect, as agent of the Board, could have refused to accept or record the bid but as, I do not consider the certificate a material statutory requirement as a part of the original bid, the architect, as the agent of the Board who prepared the specifications, had authority to permit the filing of the certificate on the following day. This was done and the Board was not justified in rejecting the bid on January 5, 1970 on the sole ground that the certificate was not attached to the bid when opened. Their rejection of petitioner’s low bid on that ground must be set aside. The court is not called upon and does not pass upon the sufficiency of the form of the certificate suggested in the specifications or furnished by the petitioner .on December 24, 1969. On its face the suggested form and petitioner’s certificate would not seem to conform to section 103-d, (a), (1), (2) and (3). The form would seem to have been used by reason of a mutual mistake of fact as to the statutory form required.
The petitioner requests further relief to the extent that the Board should be ordered to grant it the contract as the low bidder. The court cannot do so under the circumstances but refers the matter back to respondent for action in accordance with this decision.

 See Matter of Beaudette Constr. Co. v. City of Syracuse, 34 A D 2d 734 (4th Dept. April 2, 1970, affg. Spec. Term).— [Rep,

 So in original. Probably should read “ any ”.