Norm Ay L. Harvey, J.
By article 78 proceedings, petitioners seek an order of this court directing the Mayor of Bouses Point to sign a purchase order implementing a resolution of the Village Board of Bouses Point duly adopted October 16,1972. The resolution is for the purchase of a front end loader with backhoe and snowblower attachments from Jordon-Milton Machinery, Inc. of Concord, New Hampshire, declared by said resolution to be the successful bidder. The Mayor opposed the resolution and voted against its adoption. However, all other members of the board voted in favor. The Mayor refused to sign the purchase order.
The controversy is of rather long standing. The respondent, prior to his election as Mayor and as a private citizen taxpayer, commenced court actions to nullify two prior resolutions, which awarded contracts for the same equipment to a Plattsburgh, dealer. Both actions were disposed of amicably by withdrawing the resolutions and readvertising for new bid's. At the time the •second action was settled, the respondent had become Mayor. It was thought that as a member of the board considering the matter anew, he would either be successful in persuading a majority to accept his views or, if unsuccessful, he would bow to the will of the majority.
The petition in the instant action sets forth facts establishing a prima facie cause of action requiring the Mayor to perform a simple ministerial act. The answer alleges that (1) the resolution was illegal because the specifications prevented competitive bidding; (2) the resolution was illegal because the pétitioners conspired to prevent competitive bidding; and (3) the award to Jordon-Milton was illegal because of noncompliance with section 103-d of the General Municipal Law in that a noneollusive bidding certificate was not submitted at the time of the bid.
The parties agreed that petitions which had been circulated in the village favoring either the Mayor or the trustees, and which received wide publicity, were of no legal effect and should not be considered by the court.
The court believes that it is appropriate to approach the issues in reverse of the order in which they were described. A noneollusive bidding certificate was duly signed by an officer of the successful bidder as soon as its necessity was brought to the attention of that company. Jordon-Milton was an out-of-State bidder unfamiliar with New Yprk law. A noneollusive bidding *301 certificate may be submitted after bids are opened and before the bid is awarded. (Matter of Consolidated Sheet Metal Works v. Board of Educ., Enlarged City School Dist., City of Watertown, 62 Misc 2d 445; Matter of Baudette Constr. Co. v. City of Syracuse, 62 Misc 2d 564, affd. 34 A D 2d 734.) The certificate signed was inexpertly drafted but it is sufficient and it was received before the bid was accepted as the lowest bid meeting specifications.
The allegation of conspiracy was not supported by any proof of any nature. In fact, the Mayor asserted in his testimony that the petitioners had acted in a completely honest manner. That charge will not be given any further consideration.
The third allegation requires more consideration. Most of the testimony concerned the nature and effect of the specifications. It was very clear to the court that the Superintendent of Public Works preferred the combination of a Caterpillar front-end loader, a Ware backhoe and a Prink snowblower. The trustees heard his recommendations and made inquiry as to the merits of this type of equipment. Learning that the equipment was very .satisfactory, they adopted specifications which insured that any equipment purchased would be as satisfactory as the equipment they had seen.
Three bids were submitted which met specifications. Another bid arrived a day late and that bid, apparently, met the specifications or the equipment could be easily modified to meet specifications. Considering all bids, there were four dealers having contracts with two manufacturers who were interested in bidding and could meet specifications. There was competitive bidding.
At the trial, considerable emphasis was placed by the respondent upon the fact that the Superintendent of Public Works received assistance from the local Caterpillar dealer in preparing the specifications. The court considers this fact of very little importance. It would have been most impractical for the village to cause a machine to be manufactured in accordance with its specifications.. Therefore, it was necessary to adapt the specifications to machinery actually being manufactured. It was perfectly proper to consult with a representative of the manufacturer to obtain specifications of stock items. The respondent, at the trial, did not suggest any other specifications that would have guaranteed equipment of the same quality.
A municipality may not manipulate specifications so as to shut out competitive bidding or permit unfair advantage or favoritism. (Gerzof v. Sweeney, 16 N Y 2d 206.) But “ While the Legislature intended ‘ to prevent favoritism, corruption, *302 extravagance and improvidence in the procurement of work and supplies for the city ’ (People ex rel. Coughlin v. Gleason, 121 N. Y. 631, 634) by the enactment of such a statute, the act must bi given a reasonable and practical interpretation to the end that municipal public work may be performed not only honestly but efficiently.” (Hopkins v. Hanna, 135 Misc. 750, 756).
There was evidence of the submission of another bid by another dealer for approximately $10,000 less than the declared successful bidder, but the bidder did not offer to meet specifications. However, proof at the trial indicated that the suggested retail price of the two attachments called for in the specifications was $10,000 more than that equipment offered in the bid. There was no evidence at the trial indicating that the price quoted by the successful bidder was anything other than fair and reasonable.
In the absence of a clear showing of abuse by the Village Board of its power to choose the type of mechanism found to be most suitable, this court should not interfere with such choice. An abuse of that power has not been shown.
The duly elected officials of the village government who have the responsibility of decision making have exercised their judgment and made their decision. The Mayor, in good conscience, has disagreed with the majority and he has made his views known. But, he has no veto power. The resolution being legal in all respects, the law requires the Mayor to perform the simple ministerial or administrative act of signing the purchase order. (Village Law, § 80.)
The court concludes that the defenses set forth in the answer are not supported by the evidence and that the petitioners should have their demanded relief.