Harold R. Soden, J.
By an order of Honorable George L. Cobb, Supreme Court Justice, dated July 8, 1976, these article 78 proceedings were consolidated and venue set in Schenectady County.
The motions were originally heard by this court at a Special Term, Schenectady County, on July 20, 1976. An intermediate decision of the court, dated August 19, 1976, was rendered in which two proceedings were dismissed (namely: Hickey v Arlington Cent. School Dist. and Hickey v Wappingers Falls Cent. School Dist.), leaving 11 proceedings in which proof of the facts was ordered.
These proceedings are in the nature of mandamus in which the petitioner (hereinafter called Hickey) prays for an order of this court to compel all respondents to accept petitioner’s *95 school bus as offered upon the ground that petitioner’s bus bid in each case was lowest and petitioner’s bus met the specifications in each case or was "equivalent”. All respondents have taken the legal position that petitioner’s bus offers did not meet the specifications and also were not equivalent.
Although all contracts involved were "awarded” in the spring of 1976 with deliveries to be made in September and October, 1976, petitioner never endeavored to obtain any stay; consequently, manufacturing and deliveries of school buses, pursuant to the awarded contracts, have continued to date. On this ground alone, petitioner’s relief could have been denied. (Matter of General Bldg. Contrs. of N. Y. State v Board of Trustees, Vil. of Cayuga Hgts., 42 AD2d 660, 661; Matter of Andresen v Rice, 277 NY 271, 282; Matter of Ahern v Board of Supervisors of County of Suffolk, 6 NY2d 376; Matter of Allen v Eberling, 24 AD2d 594.) However, it was the sense of this court that a hearing on the merits should be held in which all parties were afforded their day in court.
Three factual issues were raised in the consolidated proceedings which were common in all cases:
(1.) Could petitioner have furnished buses which met the specifications or which were "equivalent” in every respect?
(2.) Were specifications in each case purposely drawn to match features of the buses sold exclusively by International Harvester?
(3.) If the specifications were so purposely drawn, are such specifications nevertheless required in the public interest?
Respondents conceded that the Hickey bids were equivalent to and in substantial compliance with the contract specifications as to: gradability, rear axle reduction ratio, wheelbase (with the exception of the maintenance problem of Berne-Knox School District), engine displacement, engine torque and battery power.
The four items included in all specifications not offered by Hickey were: (1) fiberglass tilt hood; (2) automatic radiator shutter; (3) 145 amp. alternator and (4) larger braking surfaces.
Much proof was offered by the 11 school districts concerning the specifications adopted by each school district in relation to the chassis and school bus bodies they each wished to purchase. The school districts called as witnesses the chairman of their respective boards, their executive officer in charge of *96 purchasing, if any, as well as their chief mechanic or person in charge of school bus maintenance. The proof offered by the professional engineers called as experts by both sides was helpful on the theory of equivalency.
It developed that the respective schools had experience over the past several years with automatic radiator shutters, fiberglass tilt hoods and 145 amp. alternators. Though the representatives of the school boards readily admitted that they drew their specifications for the foregoing items knowing at the time that they could only be furnished by International Harvester, nevertheless they offered good and sufficient reasons for demanding such features on their new school buses. The reasons given, in the main, were safety, performance, and lower costs of maintenance and repair.
The school districts are situated in areas where the temperatures drop considerably below zero for extended periods of time, and the bus routes travel over hilly and in some instances mountainous areas. The school boards have a duty to purchase, provide, and maintain buses which in their belief and from their experience provide more safety and better performance with the least cost possible.
The petitioner claims the buses he offered are equivalent to those buses offered by International Harvester though petitioner could not supply the four items or features demanded by the boards and furnished by International Harvester.
Petitioner, for the year 1976, has been awarded a State contract and wishes the court to infer that if petitioner’s product meets the State standards, such bus is equivalent. Proof established that the petitioner’s bus as offered was equivalent to the International Harvester offer in many respects but boards of education are not bound to accept minimum requirements for school buses purchased. (Matter of Atlantic Tug Equip. Co. v Town of Tonawanda, 45 AD2d 916.) If there are features available on school buses which are not frivolous and unreasonable, the school boards, as legislative bodies, have the authority to insist upon those features which provide better safety, performance, and easier and less costly maintenance.
Proof was given that some of the features desired by the respondents were available in the open market. Other proof established that automatic shutters could be adapted to the Ford chassis. Proof was likewise offered that Ford did provide a fiberglass hood on smaller designed chassis. The fact re *97 mains that the features specified by the boards of education were not unique, neither were they exclusively the property of International Harvester. These features could have been adopted by Ford engineers in Detroit, Michigan, but for some reason or reasons Ford failed to furnish these items on their bus chassis and have failed to realize that over the past several years school districts have demanded such features for good and basic reasons. Now, Hickey demands that the districts accept less on the theory of "equivalency”.
School boards do not have to accept minimum requirements. "Where a board properly specifies requirements which are in excess of the mínimums set forth in the Regulations of the Commissioner of Education, a bidder cannot bid a unit which just meets the minimum specifications of the commissioner and seek to force a board of education to accept its unit on the basis of being the lowest bidder, since the mere fact that a unit meets the minimum specifications of the regulations does not ipso facto establish that the unit bid meets the specifications specified by the board of education”. (Matter of Maier-Schule GMC, 77 NY St Dept Rep 140, 141.)
Specifications must be drawn when an offer to bid is advertised. The fact that school mechanics recommend a particular feature or features they learn from experience is better does not invalidate the bidding process or defeat the law. (Bailey v Colonna, 73 Misc 2d 299; Hopkins v Hannah, 135 Misc 750, 756.)
The court has no authority to substitute its judgment for that of the sound determination of a school board but only to review the proceedings and determine if the board’s determination was reasonable under all the circumstances. (Matter of Fonseca v Board of Educ., 58 Misc 2d 223.)
The issues are common in each of the article 78 proceedings herein. Petitioner’s position and respondents’ positions are consistent throughout. The following decision, therefore, is to be considered the decision in each proceeding:
1. Petitioner’s buses offered to the respondent school boards did not meet the specifications advertised by each board.
2. Petitioner’s school buses offered were not equivalent in respect to the four contested features desired by the respective school boards; namely, (1) fiberglass tilt hood; (2) automatic radiator shutter; (3) 145 amp. alternator and (4) larger braking surface.
*98 The granting of the extreme relief prayed for by the petitioner in all instances, especially under these circumstances, would not be in the public interest.
The relief prayed for in the petitions in all proceedings is denied with costs granted unto each respondent. The court finds facts from the proof sufficient to uphold the foregoing decision pursuant to CPLR 4213.