PAUL SARDELLA CONSTRUCTION CO., INC. *vs.* BRAINTREE HOUSING AUTHORITY & others.[1]

Norfolk.     February 5, 1976. — October 21, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Contract,* For public works, Subcontract. *Damages,* For failure to award public works contract.

A housing authority's revocation of an award to a general contractor, on the ground that a subcontractor listed in the general bid subsequently withdrew its subbid and that the substitution of another

---

[1] Joseph E. Findlen and others (Findlen) and Daniel Mazza Co., Inc. (Mazza).

subbidder resulted in the bid price of the contractor exceeding that of another general bidder, was erroneous where the authority mistakenly relied on the provisions of G. L. c. 149, § 44I (2), rather than applying § 44I (3). [240-243]

In the circumstances, the proper measure of damages for the failure of a public contracting authority to give fair consideration to a submitted bid in accordance with the provisions of G. L. c. 149, the competitive bidding statute, was the reasonable cost of preparing the bid. [243]

BILL IN EQUITY filed in the Superior Court on February 9, 1972.

The suit was reported by *Cross, J.,* to the Appeals Court. After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Sally A. Corwin (Joseph P. Hurley* with her) for the Braintree Housing Authority.

*George Waldstein* for the plaintiff.

*Theodore A. Glynn, Jr., & John W. Gahan, III,* for Joseph E. Findlen & others, submitted a brief.

HENNESSEY, C.J.   A judge of the Superior Court ruled, as matter of law, that the Braintree Housing Authority (authority)[2] was liable in damages for breach of contract to Paul Sardella Construction Co., Inc. (Sardella), for wrongfully rescinding the award to Sardella of a contract for the construction of a State-aided housing project for the elderly.[3] The matter was reported to the Appeals Court pursuant to Mass. R. Civ. P. 64, 365 Mass. 831 (1974), for determination of the correctness of the trial judge's rulings. The Appeals Court rendered a decision, holding that the reported rulings were correct. *Paul Sardella Constr. Co.*

---

[2] The judge ruled that neither Findlen nor Mazza was liable in damages to Sardella. These rulings were held to be correct by the Appeals Court, *Paul Sardella Constr. Co. v. Braintree Housing Authority,* 3 Mass. App. Ct. 326, 335 (1975), for reasons with which we are in complete accord. Therefore, we hold that the judge's rulings were correct as to Findlen and Mazza, and shall refer to these named defendants only where it is necessary.

[3] Bids were invited and the contract was awarded pursuant to the provisions of G. L. c. 149, §§ 44A-44L (fair competition for bidders of public works act).

v. *Braintree Housing Authority*, 3 Mass. App. Ct. 326 (1975). The case was ordered remanded to the Superior Court for determination of the monetary damages to be assessed against the authority in accordance with the Appeals Court's further holding that the proper measure of damages was the reasonable cost to Sardella of preparing its bid on the project. Both Sardella and the authority petitioned the Appeals Court for a rehearing of the case, which petitions were denied. We allowed the authority's petition for leave to obtain further appellate review. Mass. R. A. P. 27.1, 365 Mass. 875 (1975).

We summarize the facts, as stated in the opinion of the Appeals Court, 3 Mass. App. Ct. at 327-328, and obtained originally from a stipulation of the parties.

Sometime prior to September 15, 1971, the authority invited bids pursuant to the provisions of the fair competition for bidders of public works act (G. L. c. 149, §§ 44A-44L) for the construction of a State-aided housing project for the elderly. Thereafter, the bids of the subcontractors were opened, with the defendant Mazza found to be the lowest responsible and eligible bidder for the plumbing subcontract. Mazza's subbid was unrestricted with respect to its willingness to enter into a subcontract with any general contractor. On September 15, 1971, the bids of the general contractors were opened, with Sardella found to be the lowest responsible and eligible general bidder. Sardella listed Mazza as its plumbing subcontractor, as did the second lowest bidder. The defendant Findlen, the third lowest bidder, listed Duggan Construction Co., Inc., as its plumbing subcontractor.

On September 29, 1971, Mazza wired the authority purporting to withdraw its subbid on the basis of an alleged clerical error, and confirmed that action by a letter sent the following day.

On October 20, 1971, the authority voted to award the contract to Sardella as the lowest responsible and eligible general bidder. See G. L. c. 149, § 44A. The award was subject to the approval of the Department of Community Affairs. See G. L. c. 121B, § 31. On October 26, 1971, Sar-

della notified Mazza that it had been selected by the authority as the subcontractor and on November 15 sent Mazza proper subcontracts for its signature.

Mazza failed to execute the subcontracts within five days (G. L. c. 149, § 44I [3]) and returned the unexecuted subcontracts to Sardella on November 22, 1971, notifying Sardella and the authority of its refusal to execute "due to a bona fide clerical error" in its bid.

Thereafter, the authority reviewed all the other eligible and responsible plumbing subbids and determined that if any one of those bids was to be substituted in place of Mazza's, Findlen's bid would be the lowest general bid. The authority then voted on November 24, 1971, to rescind its award of the general contract to Sardella and to award that contract to Findlen. Sardella was not invited to nor was it represented at the meeting at which such votes were taken. A notice of the decision was mailed to Sardella, and it immediately lodged a protest with the Department of Labor and Industries, which conducted an investigation and held a conference on December 7, 1971. See G. L. c. 149, § 44K. On January 7, 1972, that department rendered its decision upholding the action of the authority in awarding the general contract to Findlen.

At a meeting held on December 15, 1971, the authority found that "a bona fide clerical error had been made by Mazza" and voted to return Mazza's deposit (which it subsequently did). See G. L. c. 149, § 44B (3). Sardella was not notified of that meeting.

On January 20, 1972, the authority and Findlen executed a contract for the project. The contract was approved by the Department of Community Affairs. Findlen has been paid the contract price, with the exception of a small amount held back pending the completion of certain seeding operations.

Both Sardella and Findlen were eligible and responsible bidders at all material times.[4]

---

[4] No facts relating to damages were stipulated. The parties agreed that, if the trial judge found liability, evidence relating to damages could be introduced at a later date. The Appeals Court decided the

We conclude that there was no error. In reaching that conclusion we agree with the result, and in general we agree with the reasoning, of the Appeals Court. However, we expand somewhat on the analysis of the Appeals Court in support of our determination that § 44I (3) is applicable. This extended discussion is recommended because of the ambiguities of the language in two subsections of the statute, as well as the obvious importance to the public and the parties in other cases of the application of the proper statutory provisions in a situation of this type with its potential for recurrence.

Preliminarily, we observe that Sardella could not prevail, at least in the circumstances of this case, if it were determined that § 44I (2) were controlling. That section is obviously designed to cause review of the lowest responsible general bid in the public interest, and with a view toward economy. This is to be accomplished, if at all, by substitution of subbidders, but the language of the section is not mandatory and hardly seems supportive of a claim like Sardella's in this case (e.g., the substitution is to be by "agreement" and the parties are to "jointly consider"). Further, in the stipulation of facts proffered by the parties in this case, there is no information from which this court could infer that a substitution of subbidders, whether concerned with plumbing or other trades, would restore Sardella as lowest responsible general bidder. By contrast, application of § 44I (3) protects Sardella's position after disappearance of the subbidder Mazza, and permits only an adjustment of the contract price.

The trial judge framed the crucial issue in this case in this way: "[W]here a sub-bidder of the lowest responsible and eligible general bidder refuses to execute his subcontract, should the procedures of G. L. c. 149, § 44I (2) [5] *or*

issue of the proper measure of damages on its own motion. Before us on further appellate review the parties have briefed and argued the question, and we consider it open for us to determine.

[5] Section 44I (2), inserted by St. 1956, c. 679, § 1, provides: "If, after the selection of the lowest responsible and eligible general bidder, it be decided to consider sub-bidders other than the ones named by such

§ 44I (3)[6] be followed?" (emphasis supplied; footnotes added). He concluded that § 44I (3) was the controlling section on the facts of the case, primarily because § 44I (2) could not, in his view, have been applicable for several reasons. The judge acknowledged that there were problems with the application of § 44I (3), but he nevertheless considered the result more equitable than if § 44I (2) were held to apply.

The arguments in support of the application of § 44I (2) are somewhat persuasive. Thus it is the authority's conten-

general bidder in his general bid, the awarding authority and such general bidder shall *jointly consider* all filed subbids not rejected under section forty-four H. Any *agreement* to substitute a sub-bid for the one named in the selected general bid shall result in an adjustment of the general bid price by the difference between the amount of the sub-bid originally named and the amount of the sub-bid substituted therefor. If by such substitutions the total adjusted general bid price of the general bidder first selected becomes greater than the original general bid price of the second lowest responsible and eligible general bidder, then the latter shall be selected and his sub-bidders similarly considered. If, by substitutions as hereinbefore provided, the total adjusted general bid price of the second selected general bidder becomes greater than the total adjusted general bid price of the general bidder first selected or greater than the original general bid price of the third lowest responsible and eligible general bidder, then the bidder having the lower of these two general bid prices shall be selected; provided, that if the third lowest responsible and eligible general bidder is selected, his sub-bidders shall be similarly considered. *The general bidder finally selected by the aforementioned process of substitutions shall be the general bidder to whom the contract shall be awarded"* (emphasis supplied).

[6] Section 44I (3), as amended by St. 1960, c. 771, § 7, provides in pertinent part: "If a selected sub-bidder fails within five days, Saturdays, Sundays and legal holidays excluded, after presentation of a sub-contract by the general bidder selected as the general contractor, to perform his agreement to execute a subcontract in the form hereinafter set forth with such general bidder, contingent upon the execution of the general contract, and, if requested so to do by such general bidder in the general bid, to furnish a performance and payment bond as stated in his sub-bid in accordance with section forty-four G, such general bidder and the awarding authority shall select, from the other sub-bids duly filed with the awarding authority for such sub-trade and not rejected under section forty-four H, the lowest responsible and eligible sub-bidder at the amount named in his sub-bid as so filed against whose standing and ability the general contractor makes no objection, and *the contract price* shall be adjusted by the difference between the amount of such sub-bid and the amount of the sub-bid of the delinquent sub-bidder" (emphasis supplied).

tion that § 44I (3) prescribes a procedure to be followed only *after final award* of a contract to the general bidder selected as the general contractor. Thus, § 44I (3) addresses itself to a possible adjustment of "the contract price." See note 6 *supra.* This language should be contrasted with the wording of § 44I (2), which speaks of permissible adjustments to the "general bid price." See note 5 *supra.* Similarly, § 44I (2) refers uniformly in several places to the "general bidder," whereas by contrast § 44I (3) refers to "the general bidder *selected as the general contractor*" (emphasis supplied). It is argued that these two subsections are designed to apply at two different stages in the process of bid selection and award.

From this contention, it is argued that § 44I (3) should not have been held applicable in this case because no final award of the contract was ever made to Sardella.[7] Compare *Crenshaw County Hosp. Bd.* v. *St. Paul Fire & Marine Ins. Co.,* 411 F.2d 213, 214-215 (5th Cir. 1969), with *Peerless Cas. Co.* v. *Housing Authority of Hazelhurst,* 228 F.2d 376, 378-379 (5th Cir. 1955), and *Lexington Housing Authority* v. *Continental Cas. Co.,* 210 F. Supp. 732, 735 (W.D. Tenn. 1962).

Nevertheless, we recognize compelling reasons why § 44I (3) should be applied here. First of all, we agree with the analysis of the Appeals Court. That court reasoned that the judge was correct in ruling that § 44I (3) should have been followed because "that section specifically provides the proper route to follow where, as here, there is a failure by the selected sub-bidder to execute a subcontract." 3 Mass. App. Ct. at 330. That court further reasoned, and we think correctly, that the problems with this result, which were envisioned by the trial judge in the statement of reasons given for his rulings, were offset by the fact that the authority was "protected from the impact" (*id.* at 331), of any increased contract price that might result

---

[7] The authority's vote of October 20, 1971, was subject to the approval of the Department of Community Affairs, and thus it is argued that no final award of the contract was made.

through the operation of § 44I (3) because the authority could retain all or a portion of the bid deposit of a subbidder as liquidated damages if the subbidder "fail[ed] to perform his agreement to execute a subcontract with the general bidder selected as the general contractor." G. L. c. 149, § 44B (3), as amended through St. 1961, c. 604, § 2.

Convincing support for this result is found in language added to G. L. c. 149, § 44H, by St. 1960, c. 771, § 5. By that language a general contractor is protected in situations not expressly covered by § 44I (3) "as if [§ 44I (3)] were applicable."[8] Thus applying the applicable language of § 44H it is seen that Sardella named Mazza, "a person included for such sub-trade in said list at the sub-bid price stated in said list." Mazza's bid turned out to be invalid, but "the general bid of such general bidder ... shall [not] be invalid or rejected because of the invalidity of such sub-bid, ... but there shall be substitution of sub-bidders and adjustment of contract price as if [§ 44I (3)] were applicable." This language leads us to § 44I (3) and the result reached by the trial judge and the Appeals Court.

The only substantial argument against applying § 44H is the requirement that the subbid be "invalid." The authority argues that § 44H does not apply for this reason. However, it appears clear to us that the word "invalid" is to be

---

[8] Presumably this language of amendment was impelled by a decision of this court which effectively stripped such a general contractor from protection against later invalidation of the contract if it were discovered that the general contract was awarded on the basis of an invalid subbid. *Grande & Son* v. *School Housing Comm. of N. Reading,* 334 Mass. 252, 259 (1956).

In material part the language of § 44H, as further amended through St. 1965, c. 836, § 5, is as follows: "If a general bidder not excluded in said list from doing so names as a sub-bidder for a sub-trade in Item 2 of the general bid form a person included for such sub-trade in said list at the sub-bid price stated in said list, neither the general bid of such general bidder nor the general contract executed on the basis of such general bid shall be invalid or rejected because of the invalidity of such sub-bid, or because of error in said list, nor shall such general bid be rejected nor shall such general contract be invalid because of any invalid action taken by the awarding authority in connection with any sub-bid or sub-bids; but there shall be substitution of sub-bidders and adjustment of contract price as if paragraph (3) of said section forty-four I were applicable."

read as expressing a broad legislative intent to classify as invalid any subbid which disappeared in circumstances like those in the instant case.

Since it is established that § 44I (3) is applicable, the clear language of that section, applied to the circumstances of this case, required that Sardella be awarded the contract.

We agree with the Appeals Court that in circumstances like those of the instant case the proper remedy is to allow recovery of the cost of preparing the general contractor's bid. See *Paul Sardella Constr. Co.* v. *Braintree Housing Authority, supra* at 833, 834, and cases and authorities cited. We need not elaborate on the reasoning advanced by the Appeals Court beyond noting that this measure of damages is the fairest in all circumstances, is consistent with the public interest, and furthers the legislative objectives underlying the fair competition for bidders of public works act.

The case is remanded to the Superior Court for the entry of judgments declaring that Findlen and Mazza are not liable to Sardella and for a determination of the damages to be awarded to Sardella from the authority in accordance with the principles set forth in this opinion.

*So ordered.*