PETRICCA CONSTRUCTION COMPANY *vs.* COMMONWEALTH.

No. 93-P-75.

Suffolk. February 14, 1994. - October 5, 1994.

Present: BROWN, PERRETTA, & GREENBERG, JJ.

*Public Works*, Bidding procedure. *Contract*, Public works, Bidding for contract. *Department of Labor and Industries. Injunction. Practice, Civil*, Interlocutory appeal, Moot case. *Moot Question. Words*, "Public interest."

This court considered a question that had become moot, where the matter was of significance to the public interest and had been fully argued, and where similar factual circumstances were likely to reoccur without an opportunity for appellate review. [394-395]

Discussion of the meaning of "public interest" in the context of the public bidding statute, G. L. c. 30, § 39M. [395-397]

The Department of Labor and Industries correctly determined that the rejection of all bids on a construction contract by the Commonwealth's Highway Department in order to send the matter out for rebidding was not in the "public interest" within the meaning of G. L. c. 30, § 39M (*a*). [397-398] BROWN, J., concurring.

In the circumstances of an action for injunctive relief, in which the issue was moot whether a single justice of this court abused his discretion in dissolving the injunction granted by the trial court, the party that had originally obtained the injunction prohibiting the rebid of a construction contract and prohibiting the award of the contract to any other party was entitled to seek damages for its bid preparation costs. [398-401]

CIVIL ACTION commenced in the Superior Court Department on June 5, 1992.

After proceedings before *J. Owen Todd*, J., a petition seeking relief from an order granting a preliminary injunction was heard in the Appeals Court by *Laurence*, J.

*John J. Spignesi* for the plaintiff.

*Christopher W. Morog*, Assistant Attorney General, for the Commonwealth.

*Charles E. Schaub, Jr., & Christopher J. Petrini,* for Utility Contractors Association of New England, amicus curiae, submitted a brief.

*John D. O'Reilly, III,* for Construction Industries of Massachusetts, Inc., amicus curiae, submitted a brief.

GREENBERG, J. In *Modern Continental Constr. Co.* v. *Lowell,* 391 Mass. 829, 840 (1984), the court, examining G. L. c. 30, § 39M,[1] and G. L. c. 149, §§ 44A-44H, stated that "the purpose of competitive bidding statutes is not only to ensure that the awarding authority obtain the lowest price among responsible contractors, but also to establish an open and honest procedure for competition for public contracts." The question now presented is whether there is found in § 39M a power of awarding authorities to recapture the benefit of a lower bid that was properly rejected for noncompliance with the bidding procedures. We conclude that § 39M does not contain such a prerogative and that the Commonwealth, acting through the board of commissioners of its Highway Department (department), was mistaken when it decided to rebid a "public works" contract.[2]

1. *Prior proceedings.* We digress to explain the procedural posture under which we have considered the appeal. At the bid opening on February 19, 1992, Gagliarducci Construction Corp. was the apparent low bidder and the plaintiff, Petricca Construction Company, the third lowest among the five bids submitted. Because of an error in arithmetic in the Gagliarducci bid, and a potential "pricing" problem with the

---

[1]General Laws c. 30, § 39M(*a*), as appearing in St. 1984, c. 484, § 35, provides, *inter alia,* that "[e]very contract for the construction, reconstruction, alteration, remodeling or repair of any public work . . . shall be awarded to the lowest responsible and eligible bidder on the basis of competitive bids publicly opened and read by such awarding authority forthwith upon expiration of the time for the filing thereof; provided, however, that such awarding authority may reject any and all bids, *if it is in the public interest to do so*" (emphasis supplied).

[2]The contract was first advertised for bid on January 11, 1992. The project involved the reconstruction of a section of Route 143 and the rehabilitation of the bridge over the west branch of the Westfield River. As a portion of a 4.2 mile detour road was suffering from erosion and in danger of becoming impassable, the project included its speedy repair.

bid of E.T. & L. Construction Corp., the second lowest bidder, the department rejected all bids and decided to readvertise the contract. A protest was filed by E.T. & L. Construction with the Department of Labor and Industries (DOLI), on May 12, 1992. Under G. L. c. 149, § 44H, the commissioner of DOLI is empowered by the Legislature to "enforce" the competitive bidding laws. Concerning this power we stated in *Doric Bldg. Assocs.* v. *Department of Labor & Indus.*, 27 Mass. App. Ct. 1175, 1177 (1989), that DOLI "has general authority to see that the bidding system of c. 149 is carried out faithfully." We also noted that DOLI has no enforcement power when it finds a violation, but may commence an action in the Superior Court when it spots an error.

Following an investigation DOLI agreed with the department that the bid of Gagliarducci had a computational error which caused it to become the second lowest bidder. DOLI found substantive defects in E.T. & L.'s bid as well. As the department acknowledged that Petricca's bid was in order, it became the lowest, eligible bid. However, on account of purported concerns over potential delay of the project and the threat of litigation by all bidders, the department chose instead, to readvertise, rather than following the DOLI's administrative decision awarding the contract to Petricca.

This action was commenced on June 5, 1992, by Petricca, as an application for preliminary injunction to require the department to comply with DOLI's decision. After hearing on June 16, 1992, a judge of the Superior Court enjoined the department from rebidding or awarding the contract to any party other than Petricca. On a petition of the department to this court seeking relief under G. L. c. 231, § 118, first par., a single justice ordered that the injunction be dissolved and this appeal ensued. The rebidding process, meanwhile, continued apace. On August 4, 1992, the department awarded the contract to Gagliarducci, and construction began on September 28, 1992.

2. *Mootness and standard of review.* Ordinarily, we review the single justice's order "in the same manner as if it were an

identical order by the trial judge considering the matter in the first instance." *Jet-Line Servs., Inc.* v. *Selectmen of Stoughton*, 25 Mass. App. Ct. 645, 646 (1988). Thus we ask whether the single justice abused his discretion by entering an order without having a supportable basis for doing so. See *Carabetta Enterprises, Inc.* v. *Schena*, 25 Mass. App. Ct. 389, 392 (1988). Here, the public construction has been started and the aggrieved party failed to move for an expedited appeal. The threshold question posed by the department is whether the matter is moot.

Even though the requested injunctive relief is now academic, Petricca does have a continuing interest in pursuing a judgment against the department for bid preparation costs. See *Paul Sardella Constr. Co.* v. *Braintree Hous. Authy.*, 371 Mass. 235, 243 (1976). More significantly, "we have on occasion answered questions in moot cases where the issue was one of public importance, where it was fully argued on both sides, where the question was certain, or at least very likely, to arise again in similar factual circumstances, and especially where appellate review could not be obtained before the recurring question would again be moot." *Lockhart* v. *Attorney Gen.*, 390 Mass. 780, 783 (1984). See *Sciaba Constr. Corp.* v. *Boston*, 35 Mass. App. Ct. 181, 185 (1993). Cf. *Grande & Son, Inc.* v. *School Hous. Comm. of North Reading*, 334 Mass. 252, 259 (1956). Because of the significance of the question to the public and because the facts as developed permit us to do so, we have decided the ultimate question: whether the public interest warranted rejection of the original bids.[3]

3. *Interpretation of G. L. c. 30, § 39M*. Section 39M of the act provides that the "awarding authority may reject any and all bids, if it is in the public interest to do so." Some courts in other jurisdictions have clearly defined the meaning of "public interest" within the context of their public bidding statutes to mean guarding "against favoritism, improvidence,

[3]We acknowledge Construction Industries of Massachusetts, Inc., and Utility Contractors Association of New England, who have submitted briefs as amici curiae.

extravagance and corruption." *Morie Energy Mgmt., Inc. v. Badame*, 241 N.J. Super. 572, 576 (1990), quoting from *Hillside Township* v. *Sternin*, 25 N.J. 317, 322 (1957). See *Conduit & Foundation Corp.* v. *Metropolitan Transp. Authy.*, 66 N.Y.2d 144, 148 (1985); *Nelson Inc. of Wis.* v. *Sewerage Commn. of Milwaukee*, 72 Wis. 2d 400, 408 (1976).

Similar objectives are found in this State's scheme. Read in conjunction with G. L. c. 149, §§ 44-44M, the legislative goals of § 39M are two-fold. First, to create an open and honest competition with all bidders on an equal footing. *Interstate Engr. Corp.* v. *Fitchburg*, 367 Mass. 751, 758 (1975). Absent such a restriction, an awarding authority would be free to rebid a contract until a preferred bidder submitted the lowest bid price, and thwart one of the important legislative goals. See *Cardell, Inc.* v. *Woodbridge*, 115 N.J. Super. 442, 450 (1971). Second, § 39M enables the public contracting authority to obtain the lowest eligible bidder. *Interstate Engr. Corp.* v. *Fitchburg, supra* at 757. In reviewing the conduct of awarding authorities in regard to bid protests, we think equal weight should be given to the two stated purposes of the statute. While there is no Massachusetts case directly on the point, other courts have made clear that awarding authorities may not reject bids simply to obtain a lower price. See *Superior Oil Co.* v. *Secretary of the Interior*, 409 F.2d 1115, 1120 (D.C. Cir. 1969); *Caruci* v. *Dulan*, 41 Misc. 2d 859, 864 (1964), rev'd on other grounds, 24 A.D.2d 529 (N.Y. 1965). Cf. *Grande & Son, Inc.* v. *School Hous. Comm. of North Quincy*, 334 Mass. at 258.

The possibility of rebidding a project in order to obtain a lower bid was disfavored in the *Caruci* case where the court stated that "[s]uch a procedure also exposes the secret bid price to other potential bidders and may provide the means whereby a future municipal government can use this power of rejection to award contracts to persons of their choice." *Caruci* v. *Dulan, supra* at 864. An identical theme is found in one of the earliest bid protest cases, *Sweezey* v. *Mayor of*

*Malden*, 273 Mass. 536, 542 (1931), which cautioned that any application of the bidding laws which would give the awarding authority "an opportunity to exercise favoritism in awarding contracts" should be avoided.

To avoid unfairness in that regard, an essential element of the "equal footing" principle not only requires that "bidders have the opportunity to bid in the same way," but mandates that bidders "bear the same risk of rejection." *Department of Labor & Indus.* v. *Boston Water & Sewer Commn.,* 18 Mass. App. Ct. 621, 626 (1984).

4. *The merits.* It follows from what has been said about the purpose of § 39M in context of the well known standards for awarding or denying preliminary relief and for appellate review set forth in *Packaging Indus. Group, Inc.* v. *Cheney,* 380 Mass. 609, 610-618 (1980), that Petricca demonstrated a reasonable likelihood of success on the merits.

In its May, 1992, decision, the DOLI determined that the department's rejection of all bids was not in the public interest. It found that the department failed to prove, as required by G. L. c. 30, § 39M, that the public interest would be served by rejecting all bids and rebidding the contract. As was the case in *Modern Continental Constr. Co.* v. *Lowell,* 391 Mass. at 837, the single justice could take into consideration the DOLI decision even though it was entitled to no special weight. *Sciaba Constr. Corp.* v. *Boston,* 35 Mass. App. Ct. at 183 n.4

The department's decision to order rebidding of the contract was not based on any abuse of the process, or violation of any of the accepted rationales for rejecting bids, i.e., insufficient funds, ambiguous bid specifications, or new specifications on rebid. See *Delta Chem. Mfg. Co.* v. *Department of Gen. Servs.,* 81 A.D.2d 507 (N.Y. 1981). See generally Annot., Public Contracts: Authority of State or its Subdivision to Reject All Bids, 52 A.L.R. 4th 186 (1987). Rather its stated reason for starting anew was the desire to avoid delay and to avoid litigation. By memorandum submitted at the hearing before DOLI, the department acknowledged that Petricca's bid "appeared in order and was within the engineer's

estimate." That being the case, the department could have awarded the contract to Petricca. Construction presumably could have started shortly thereafter. No real advantage obtained — at least in an acceleration of the process — by permitting a rebidding of the contract.

That the department's rationale appears contrary to the realities prompts us to look at the only other basis cited by the department to justify rebidding of the contract; that is, to stay clear of litigation. In its May, 1992, decision, DOLI stated: "As a practical matter, the [department] has not avoided litigation [because] E.T. & L. is objecting to the attempt to rebid. Moreover, the threat of litigation by aggrieved bidders is a common occurrence especially in large projects such as the instant one . . . so that rebidding does not avoid litigation." We agree with DOLI's conclusion that the department has not articulated a legitimate public interest rationale for rejection of Petricca's bid.

5. *Balancing the risks of harm.* The single justice in a thoughtful memorandum, indicated concern over the loss of several hundred thousands of public tax dollars in the event Petricca was awarded the contract. He was of opinion that the damage to the Commonwealth was more immediate and substantial than the potential loss of profits to Petricca. However, there was no factual basis upon which to make that determination; a second round of bidding would not necessarily result in a significant savings compared to awarding the contract to Petricca.

Last, the single justice determined that, "more decisively, the continuation of the seriously defective road conditions that would result from maintenance of the injunction" pose a concrete danger to public safety. As we noted in section 2, *supra,* if the injunction had been maintained and enforced, repair of the deteriorating roadway could have started immediately. Because the contract had to be rebid, the start of reconstruction was delayed until September 16, 1992. Had the injunction remained in place, the contract would have been awarded on July 20, 1992. No real advantage was ob-

tained — at least in accelerating the process of the work — by permitting a rebidding of the contract.

6. *Adequate remedy at law.* The single justice found it "[m]ost significant . . . that Petricca [did] not establish[ ] that it w[ould] suffer, should injunctive relief be withheld, immediate or irreparable harm that [could] not be adequately compensated by a final judgment for money damages should it prevail on the merits. See *Paul Sardella Constr. Co.* v. *Braintree Hous. Authy.*, 3 Mass. App. Ct. 326, 333-335 (1975) [S.C., 371 Mass. 235, 243 (1976)]." He concluded that Petricca could recover bid preparation costs if upon trial it turned out that Petricca's bid was unfairly rejected.

Such a consolation prize pales in comparison to an award of the contract. Petricca has not argued that the Commonwealth was guilty of any "bad faith." See *Bradford & Bigelow, Inc.* v. *Commonwealth*, 24 Mass. App. Ct. 349, 359 (1987), so that an action for lost profits was out of the question. At the time Petricca sought injunctive relief, the award of the contract was at stake. Without a preliminary injunction, whatever profits it may have received upon completion of the work, would be lost forever, and could not be recovered in an action at law. At that juncture, bid preparation costs "fall[] far short of being equivalent of the potential to win the contract." *Modern Continental Constr. Co.* v. *Lowell*, 391 Mass. at 837.[4]

7. *Ultimate relief.* The single justice thought that the injunction violated the principle that courts should not ordinarily grant an applicant through a preliminary injunction all or substantially every aspect of the ultimate relief the applicant seeks. It is true that the purpose of a preliminary injunction is "only to preserve the status quo while the case is under consideration." *Jet-Line Servs., Inc.* v. *Selectmen of Stoughton*, 25 Mass. App. Ct. at 649-650. While the deter-

---

[4]That the plaintiff is eligible to rebid along with all other potential contractors does not remedy this ill. If the plaintiff is entitled to the contract at its original bid price, that it can win the contract at a different bid price would only alter its vested rights to profit under the first bid.

mination is made only "after an abbreviated presentation of the facts and the law," *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. at 616, there is no per se prohibition against granting an applicant, through a preliminary injunction, all of the ultimate relief the applicant seeks prior to a full trial. It is proper, indeed desirable, to issue an injunction if its issuance is the only way to preserve the status quo and it promotes the public interest to do so, even though it grants the ultimate relief sought. See *Edwards* v. *Boston*, 408 Mass. 643, 646-647 (1990).

Moreover, the issuance of a preliminary injunction in this type of case is specifically authorized by statute. Although not invoked in this case, G. L. c. 149, § 44H, as amended by St. 1985, c. 808, grants to the Commissioner of the DOLI, or his designee, "all the necessary powers to require compliance [with the bidding laws] including the power to institute and prosecute proceedings in the superior court to restrain the award of contracts and the performance of contracts." Power to pursue an injunction to enforce the bidding laws is illusory if a private litigant is barred by rigid application of equitable principles. A private litigant, for these purposes, is not distinguishable from the DOLI. See *Modern Continental Constr. Co.* v. *Lowell*, 391 Mass. at 835-836. Granting an applicant, through a preliminary injunction, all of the ultimate relief the applicant seeks after a full trial in the appropriate circumstances is a common and proper occurrence. See *Quincy Ornamental Iron Works, Inc.* v. *Findlen*, 353 Mass. 85, 87-88 (1967); *Modern Continental Constr. Co.* v. *Lowell, supra* at 837-838; *Edwards* v. *Boston, supra* at 645-647; *J. D'Amico, Inc.* v. *Worcester*, 19 Mass. App. Ct. 112, 114-115 (1984).

8. *Security bond.* The single justice expressed concern that the injunction was improperly issued because the Superior Court judge "ignored the mandate of Mass.R.Civ.P. 65(c), 365 Mass. 833 (1974), that no preliminary injunction shall issue without appropriate security except for good cause shown." However, we note that rule 65(c) explicitly allows the court discretion as to security. See Smith & Zobel, Rules

Practice § 65.9 (1981). Particularly in light of an absence of a request for security by the department, there was no abuse of discretion.

9. *Conclusion.* The appeal from the single justice's order is moot and must be dismissed. Petricca, however, may seek damages in the form of its bid preparation costs in the Superior Court action.

*Appeal dismissed.*

BROWN, J. (concurring). I have no quarrel with the majority opinion. I write separately because, once again, I observe the blatant disregard of the law by an agency of the Commonwealth and an apparent lack of competence on the part of that agency's deputy chief counsel.[1] The tortured and lengthy history of this case's journey through the legal system is just one more embarrassing monument to wrong-headed lawyering.[2] Instances such as this serve to decrease the public's confidence in government agencies and our public servants.

The ruling by the Department of Labor and Industries (DOLI) was clear, concise, and correct: There was no need to rebid, as the "public interest" was not adversely affected, and "the contract should [have been] awarded to Petricca," the entity whose bid had *not* been deemed informal and was lower than the Highway Department's engineer's estimate. Instead, the department chose to flout the DOLI determination and to rebid the project. That ill-advised decision spawned this lengthy, costly, and in my view, unnecessary, litigation, creating in its wake "dark suspicions" that "something is amiss" in the administrative process. Cf. *Greco* v. *Suffolk Div. of the Probate and Family Ct. Dept.*, 418 Mass. 153, 157-158 (1994).

---

[1]The record is silent as to the whereabouts of the agency's chief counsel during these proceedings.

[2]Fairness compels me to commend the professionalism of the Department of Labor and Industries in this matter.

I close as I have so often with the same sermon: Litigation should be a last resort, not the first option. It seems all too often to be the only weapon in the government attorney's arsenal. Rational thought and wise counseling are available at far less expense; they appear not to have been used by the Highway Department's legal staff in this case. Government lawyers must step up and consider the ethical, as well as the practical, consequences of their respective agencies' actions. See *Lovell* v. *Superintendent, North Central Correctional Inst.*, 26 Mass. App. Ct. 35, 41 (1988) (Brown, J., concurring). They owe their client, the public, and the profession nothing less than that. Lawyers for the government must never forget that, in the performance of official duties, their oath and the canons of ethics are the paramount imperatives of the profession, not merely words mouthed perfunctorily at the time they are sworn in as members of the bar.