Annese Electrical Services, Inc. *vs.* City of Newton.[1]

Norfolk. March 6, 2000. - June 21, 2000.

Present: Marshall, C.J., Abrams, Lynch, Greaney, Ireland, Spina, & Cowin, JJ.

*Contract,* Bidding for contract, Subcontract. *Public Works,* Bidding procedure. *Statute,* Construction. *Words,* "Subbid," "Received."

Discussion of the competitive bidding statute, G. L. c. 149, §§ 44A-44H. [767]

This court concluded that the phrase "sub-bids . . . received" in G. L. c. 149, § 44E (1), means subbids that are available to be selected and are not invalid by reason of lack of competence of the bidder, failure to conform, or withdrawal [767-769]; as a consequence, a municipality properly rejected under that statute two economically unreasonable subbids that remained after three other subbids were withdrawn and properly resolicited subbids for the work [769].

There was no merit to the claim of a subcontractor, an unsuccessful bidder on a municipal construction contract, that the municipality rejected its bid and rebid the subcontract simply to obtain a lower price or to award the subcontract to another particular subcontractor. [769-771]

The finding of the Attorney General as designee of the Commissioner of Labor and Industries pursuant to G. L. c. 149, §. 44H, which was not further enforced, with respect to a protest of a resolicitation of subbids on a municipal construction contract, had no evidentiary weight in a later civil action against the municipality brought by the disappointed subbidder. [771]

Civil action commenced in the Superior Court Department on September 21, 1995.

The case was heard by *Richard J. Chin,* J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jonathan P. Sauer* for the plaintiff.

*Donnalyn B. Lynch Kahn* for the defendant.

Spina, J. Annese Electrical Services, Inc. (Annese), brought suit against the city of Newton (Newton), claiming that it was

[1]CNM Electrical Construction, Inc., intervener.

entitled to the subcontract for electrical work on a public building project and that Newton's resolicitation of electrical subbids for the project violated G. L. c. 149, § 44E (1). The parties filed cross motions for summary judgment. A Superior Court judge denied Annese's motion and granted Newton's motion, concluding that Newton acted within its discretion to rebid the work. On appeal, Annese argues that the judge erred because (1) Newton lacked discretion under G. L. c. 149, § 44E (1), to resolicit subbids after its first solicitation yielded five bids, none of which had been rejected; (2) Newton was required to award the electrical subcontract to Annese under G. L. c. 149, § 44F (4) (*c*); (3) Newton's sole and impermissible purpose for resoliciting electrical subbids was to obtain a lower price; and (4) the decision of the Attorney General that Newton's resolicitation was contrary to law was not given appropriate weight. The plaintiff further claims it is entitled to damages in the form of bid preparation costs or lost profits. We transferred this case from the Appeals Court on our own motion. We affirm.

1. *Background facts.* We summarize the material facts which are undisputed and present only a question of law.[2] On May 8, 1995, Newton invited general contractors and subcontractors to bid on a project to renovate and make additions to Newton South High School (project). The project required general construction work as well as work in numerous subtrades, including electrical. Newton had estimated the cost of the proposed electrical work to be $487,000. In accordance with G. L. c. 149, §§ 44A-44H, Newton invited electrical subcontractors to submit bids for the work by May 31, 1995. On that date, Newton opened five filed electrical subbids[3] with the following prices:

---

[2]The standard for reviewing the denial of a motion for summary judgment is whether the record shows that there is no genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. *Greater Boston Real Estate Bd.* v. *Boston,* 428 Mass. 797, 798 (1999). See Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). Contrary to Annese's assertion, statutory interpretation is a question of law for the court to decide. *Commonwealth* v. *Cintolo,* 415 Mass. 358, 359 (1993).

[3]General Laws c. 149, § 44F (1), provides that, when work in a certain statutorily specified subtrade must be performed in a public building project and the value of the work exceeds $10,000, a subcontractor must "file" its "subbid" to perform the work directly with the awarding authority.

| Company | Base Bid |
| --- | --- |
| Campbell Electric, Inc. | $496,000 |
| The Sentry Corporation | $620,000 |
| James Galvin Electrical Contracting Corp. | $675,000 |
| Annese Electrical Services, Inc. | $855,000 |
| CNM Electrical Construction, Inc. | $883,000 |

The bids, including limitations as to use by general contractors, were placed on a list and sent to "every person on record as having taken a set of plans and specifications," conformably with G. L. c. 149, § 44F (3).

On June 14, 1995, the general bids were opened. Later that day Campbell Electric, Inc. (Campbell), and James Galvin Electrical Contracting Corp. notified Newton that they had made errors in their bid calculations and requested withdrawal of their bids. Newton determined that each subcontractor had made a bona fide clerical error of a substantial nature in its bid and returned their bid deposits.[4]

On July 7, 1995, Newton awarded[5] the general contract to TLT Construction Corporation (TLT). In its award letter to TLT, Newton followed the procedure set out in G. L. c. 149, § 44F (4) (*c*), and adjusted TLT's bid price to reflect the substitution of The Sentry Corporation (Sentry) for Campbell, which had been named in TLT's original bid.[6] On July 13, 1995, Sentry requested permission to withdraw its bid because of a clerical error. Its bid deposit

---

[4]Each subbidder on a public building project must submit a bid deposit in an amount equal to five per cent of the value of its bid. G. L. c. 149, § 44B (2). If a selected subbidder fails to execute a contract with the selected general contractor, its bid deposit shall become the property of the awarding authority as liquidated damages, provided that, in case of a "bona fide clerical . . . error of a substantial nature" in the subbid, the bid deposit shall be returned to the subbidder. G. L. c. 149, § 44B (4).

[5]The "award" of a contract is an expression of an intent to enter a contract. It is not synonymous with the execution of a contract. See *Paul Sardella Constr. Co.* v. *Braintree Hous. Auth.*, 371 Mass. 235, 241 (1976). See also G. L. c. 149, § 44F (4) (*b*).

[6]General Laws c. 149, § 44F (4) (*c*), provides: "If a selected sub-bidder fails, within five days . . . after presentation of a subcontract by the general bidder selected as the general contractor, to perform his agreement to execute a subcontract . . . such general bidder and the awarding authority shall select, from the other sub-bids duly filed with the awarding authority . . . the lowest responsible and eligible sub-bidder at the amount named in his sub-bid . . . and the contract price shall be adjusted by the difference between the amount of such sub-bid and the amount of the sub-bid of the delinquent sub-bidder."

was returned after Newton determined that Sentry had made a bona fide clerical error of a substantial nature in its bid. As a consequence, there remained only two filed electrical subbids: Annese at $855,000 and CNM Electrical Construction, Inc. (CNM), at $883,000. The remaining bids were significantly higher than the $487,000 Newton had estimated for the electrical work. Due to the substantial difference in price between the remaining bids and Newton's cost estimate, Newton deemed the bids uneconomical without further competition, and on August 4, 1995, invited electrical subcontractors to bid on the project again. The second set of bid documents was restructured so that part of the original scope of work was set out as an alternate, giving Newton the option whether to proceed with the additional work.

On August 10, 1995, Newton and TLT executed the general contract, which contained a clause stating that Sentry was entitled by statute to withdraw its bid, that Newton intended to rebid the electrical work, and that the parties agreed to amend the contract to reflect the bid price of the lowest responsible and eligible electrical subbidder in the second round of bidding. On August 21, 1995, the second round of electrical subbids were opened, the results of which were as follows:

| Company | Base Bid |
| --- | --- |
| CNM Electrical Construction, Inc. | $663,000 |
| Annese Electrical Services, Inc. | $696,000 |
| James Galvin Electrical Contracting Corp. | $805,000 |

In the interim, on August 11, 1995, Annese protested the second solicitation for electrical work to the Commissioner of Labor and Industries (commissioner), pursuant to G. L. c. 149, § 44H. The protest was heard by the Attorney General, the commissioner's designee.[7] On September 6, 1995, the Attorney General concluded that Newton's second solicitation of electrical subbids was a violation of the public bidding laws.[8] Notwithstanding the decision of the Attorney General, and with Newton's approval, TLT executed a subcontract with CNM,

---

[7]Section 44H was amended by St. 1996, c. 151, § 386, and by § 690 made effective July 1, 1996, giving enforcement powers directly to the Attorney General.

[8]As the designee of the Commissioner of Labor and Industries (commissioner), the Attorney General had the power to enforce his decision by filing suit in the Superior Court, G. L. c. 149, § 44H, but enforcement was not pursued in this case for reasons not stated in the record.

which subsequently performed and completed the electrical work.[9]

2. *Overview.* General Laws c. 149, §§ 44A-44H, is known as the competitive bidding statute. It provides comprehensive and detailed requirements for public agencies that award building contracts estimated to cost more than $25,000. G. L. c. 149, § 44A (2). "We construe G. L. c. 149, §§ 44A-44[H], as we must, in light of the legislative objectives which were served by its enactment so as to effectuate the purpose of the framers." *John T. Callahan & Sons* v. *Malden,* 430 Mass. 124, 128 (1999), quoting *Interstate Eng'g Corp.* v. *Fitchburg,* 367 Mass. 751, 757 (1975). The purposes of the competitive bidding statute are "to ensure that the awarding authority obtain the lowest price among responsible contractors" and "to establish an open and honest procedure for competition for public contracts." *John T. Callahan & Sons* v. *Malden, supra,* quoting *Modern Cont. Constr. Co.* v. *Lowell,* 391 Mass. 829, 840 (1984), and *James J. Welch & Co.* v. *Deputy Comm'r of Capital Planning & Operations,* 387 Mass. 662, 666 (1982). The statute "places all general contractors and subbidders on an equal footing in the competition to gain the contract." *John T. Callahan & Sons* v. *Malden, supra. Interstate Eng'g Corp.* v. *Fitchburg, supra* at 757-758. "The statutory procedure facilitates the elimination of favoritism and corruption as factors in the awarding of public contracts and emphasizes the part which efficient, low-cost operation should play in winning public contracts." *John T. Callahan & Sons* v. *Malden, supra. Interstate Eng'g Corp.* v. *Fitchburg, supra.*

3. *Newton's discretion to resolicit bids.* Annese argues that because Newton had "received" five bids in response to the first solicitation it was not entitled to resolicit subbids for the electrical work. General Laws c. 149, § 44E (1), provides that "[i]n inviting sub-bids . . . the awarding authority shall reserve the right to reject any sub-bid on any sub-trade, if it determines that such sub-bid does not represent the sub-bid of a person competent to perform the work as specified or that *less than three such sub-bids were received* and that the prices are not reasonable for acceptance without further competition" (emphasis added). Annese further asserts that, because the third

---

[9]Annese's appeal is not moot. Annese has a continuing interest in pursuing its bid preparation costs. See *Petricca Constr. Co.* v. *Commonwealth,* 37 Mass. App. Ct. 392, 395 (1994).

lowest bidder withdrew after the general bids were opened, Newton and TLT were required to award the electrical contract to the next lowest bidder, Annese, in accordance with G. L. c. 149, § 44F (4) (*c*), which provides: "If a selected sub-bidder fails, within five days . . . after presentation of a subcontract by the general bidder selected as the general contractor, to perform his agreement to execute a subcontract . . . such general bidder and the awarding authority shall select, from the other sub-bids duly filed with the awarding authority . . . the lowest responsible and eligible sub-bidder at the amount named in his sub-bid . . . and the contract price shall be adjusted by the difference between the amount of such sub-bid and the amount of the sub-bid of the delinquent sub-bidder." See *Paul Sardella Constr. Co.* v. *Braintree Hous. Auth.*, 371 Mass. 235 (1976) (interpreting identical provisions of former G. L. c. 149, § 44I [3]). Resolution of the central issue of this case depends upon the meaning of the words "sub-bids . . . received," which are not defined in the statute.

Implicit in Annese's argument is the notion that a subbid is "received" when it is delivered to the awarding authority, without regard to its validity. A subbid may be delivered but subsequently rendered invalid under any of several methods set forth in the competitive bidding statute. For example, a subbid may be rejected for failure to "conform with [§§ 44A-44H], inclusive, or which is on a form not completely filled in, or which is incomplete, conditional or obscure, or which contains any addition not called for." G. L. c. 149, § 44F (3). See *J. & J. Elec. Co.* v. *Government Center Comm'n*, 349 Mass. 172 (1965) (construing identical terms of former § 44H). A subbidder may be rejected for lack of competence. See G. L. c. 149, § 44F (4) (*b*), (*c*). See also *Rudolph* v. *City Manager of Cambridge*, 341 Mass. 31 (1960) (construing identical terms of former § 44I [2] and [3]). A subbid may be withdrawn because of "death, disability, bona fide clerical or mechanical error of a substantial nature, or other unforeseen circumstances affecting any such sub-bidder." G. L. c. 149, § 44B (4). Subbids which are not available for any of these reasons are considered "invalid." See *Paul Sardella Constr. Co.* v. *Braintree Hous: Auth.*, *supra* at 242-243. If emphasis is placed on the meaning of the word "received," as Annese urges, and if at least three subbids are received in a subtrade, then an awarding authority can never count on having at least three subbids from which a selection

may be made in that subtrade. This is so because some or all of the subbids received may be determined to be invalid, as here, and resolicitation would be prohibited. The result is nonsensical and it would frustrate the purposes of the competitive bidding statute. We think the analysis instead should focus on the meaning of the entire phrase "sub-bids . . . received."

Subcontractors who have been permitted to withdraw their subbids pursuant to G. L. c. 149, § 44B (4), have removed themselves from the competition for the contract and extinguished any chance of meeting the basic statutory requirement of being able to perform the work at the price bid. They are not competitive within the meaning of G. L. c. 149, §§ 44A-44H, because they are not on an "equal footing" with those who remain in the competition for the contract and they have no chance of ever becoming an "responsible and eligible" low bidder on the project. They are not available to be selected as subbidders, so their bids need not be considered "sub-bids . . . received" within the meaning of G. L. c. 149, § 44E (1). Construed in this manner, § 44E (1) retains its viability in effectuating the purposes of the competitive bidding statute.

Newton did not abuse its discretion under G. L. c. 149, § 44E (1), in rejecting the subbids of Annese and CNM because it received less than three electrical subbids which it determined were uneconomical without further competition. See *Brisk Waterproofing Co.* v. *Director of the Div. of Bldg. Constr.*, 338 Mass. 784 (1958). It was then free to resolicit subbids for the electrical work.

4. *Purpose of obtaining a lower price.* Annese contends that "awarding authorities may not reject bids simply to obtain a lower price," *Petricca Constr. Co.* v. *Commonwealth*, 37 Mass. App. Ct. 392, 396 (1994), because resoliciting bids on a project in order to obtain a lower price contravenes the stated purpose of placing all subbidders on an equal footing, "exposes the secret bid price to other potential bidders and may provide the means whereby a future municipal government can use this power of rejection to award contracts to persons of their choice." *Id.* Specifically, Annese complains that its "secret price" exposed "the correct low number for the project," thereby causing other electrical subbidders to cut their prices in order to meet or beat it in the second solicitation, "against the letter and spirit of the competitive bidding system."

Annese's reliance on *Petricca* is misplaced. There, the award-

ing authority rejected Petricca's bid and resolicited the entire project under G. L. c. 30, § 39M, in order to "avoid delay and to avoid litigation," despite the fact that Petricca's bid "appeared [to be] in order and was *within the engineer's cost estimate*" (emphasis added). *Id.* at 397-398. The standard for rejecting bids solicited under G. L. c. 30, § 39M (*a*), is identical to the standard for rejecting general bids solicited under G. L. c. 149, § 44E (1), which provides that any such bids may be rejected "if it be in the public interest to do so." The *Petricca* court found that the awarding authority had no factual basis for presuming that rejection of Petricca's bid would "avoid delay and litigation," nor did it have any other legitimate public interest rationale for rejecting Petricca's bid, and thus it rejected the bid in violation of the competitive bidding laws. Here, we are concerned with the rejection of subbids, for which the standard is more precise. An awarding authority may reject subbids for any subtrade if it determines that "less than three such sub-bids were received and that the prices are not reasonable for acceptance without further competition." G. L. c. 149, § 44E (1).

In this case, Newton was left with two valid subbids after three subbidders were permitted to withdraw, and therefore received "less than three such sub-bids." *Id.* Those two subbids, Annese's at $855,000 and CNM's at $883,000, were more than 75% greater than Newton's cost estimate of $487,000. Such a substantial disparity in price, without other bids to establish the actual market price of the work, gave Newton adequate grounds for determining that the prices were not "reasonable for acceptance without further competition"[10] and for rejecting the subbids of Annese and CNM. It needed no other reason. Unlike the awarding authority in *Petricca*, Newton had reasonable grounds to believe that it could obtain a lower electrical price by resoliciting bids because it revised the bid documents to reflect a potentially lesser scope of work, though it was not required to follow that course. Newton did not violate G. L. c. 149, § 44E (1).

We also fail to discern the harm experienced by Annese in

---

[10]There has been no showing of fraud, collusion, or bad faith on the part of Newton in its determination that the three subbidders had made bona fide clerical errors so as to warrant permission for withdrawal. See *Pacella* v. *Metropolitan Dist. Comm'n*, 339 Mass. 338, 347 (1959); *Slocum* v. *Medford*, 302 Mass. 251, 254 (1939).

being "forced" to reveal its "secret price" at the first bid opening. All of the subbidder's prices, including those of Annese, CNM, and the contractors who ultimately withdrew, were revealed at the first bid opening, as is the case whenever all bids are rejected prior to resolicitation. All electrical subcontractors began and ended on the same footing. CNM was the low bidder in the second round of bidding, but the low bidder just as easily could have been Annese. There also is no support in the record for Annese's insinuation that Newton resolicited the bids in order to award the contract to another, more favored, electrical subcontractor. The record shows that Annese had previously performed work for Newton, and that Newton felt that Annese had done a "fine job."

5. *Deference to Attorney General.* Citing our decision in *Modern Cont. Constr. Co.* v. *Lowell,* 391 Mass. 829, 837 (1984), Annese also argues that the decision by the Attorney General was entitled to more respect and deference than that accorded by the motion judge in this case. Annese misconstrues our holding in that case. General Laws c. 149, § 44H, provided in relevant part that the commissioner or his designee "shall have all the necessary powers to require compliance [with §§ 44A-44H] including the power to institute and prosecute proceedings in the superior court to restrain the award of contracts and the performance of contracts . . . where, after investigation of the facts, he has made a finding that such award or performance has resulted in violation . . . of the provisions of [§§ 44A-44H]."[11] The references in § 44H to "investigation" and "finding" are not the equivalent of an adjudicatory proceeding under G. L. c. 30A, but only descriptive of stages in the prosecutorial function. As such, the Attorney General's decision under § 44H carries no weight in the evidentiary sense. See *Department of Labor & Indus.* v. *Boston Water & Sewer Comm'n,* 18 Mass. App. Ct. 621, 623 n.7 (1984).

*Judgment affirmed.*

---

[11]The commissioner no longer has this enforcement power. See note 7, *supra.*