J.F. WHITE CONTRACTING CO. *vs.* MASSACHUSETTS PORT AUTHORITY; M. DeMATTEO CONSTRUCTION CO., intervener.

No. 01-P-289.

Suffolk. May 16, 2001. - June 8, 2001.

Present: LAURENCE, SMITH, & MASON, JJ.

*Injunction. Contract,* Bidding for contract, Public works. *Public Works,* Bidding procedure.

A Superior Court judge did not abuse her discretion in denying a request for a preliminary injunction by an unsuccessful bidder (plaintiff) that would have prohibited the Massachusetts Port Authority from awarding to any contractor, other than the plaintiff, a contract for certain renovation work to be performed on a bridge in Boston, where the plaintiff, contending that it was the low bidder and hence entitled to the contract under G. L. c. 30, § 39M, the competitive bidding statute, showed no reasonable likelihood of success on the merits of its claim. [813-817]

CIVIL ACTION commenced in the Superior Court Department on January 30, 2001.

The case was heard by *Elizabeth M. Fahey*, J.

A proceeding for interlocutory review was heard by *Brown*, J.

*Robert D. City* for the plaintiff.

*Robert P. Garrity* for the defendant.

*Joel Lewin* for the intervener.

MASON, J. J.F. White Contracting Company (White) appeals from the denial of its request for a preliminary injunction prohibiting the Massachusetts Port Authority (Massport) from awarding to any contractor, other than White, a contract for certain renovation work to be performed on the Tobin Memorial Bridge in Boston. White contends that it was the low bidder and hence is entitled to the contract under G. L. c. 30, § 39M, the statute governing competitive bidding practices on public works projects. Section 39M(*a*) provides in general that every

contract for the construction or repair of any public work, estimated to cost more than $10,000, shall be awarded "to the lowest responsible and eligible bidder on the basis of competitive bids publicly opened and read." Because we find no abuse of discretion or other error of law in the judge's decision denying preliminary injunctive relief, we affirm the denial.

*The facts.* The affidavits and other materials before the Superior Court judge showed the following facts. In September, 2000, Massport solicited bids for Phase 5 of a lengthy project involving renovation and rehabilitation of the Maurice H. Tobin Memorial Bridge in Boston. All interested bidders were invited to submit alternate bids, one based on use of "type 5" cement concrete for the project, and one based on use of "silica fume" concrete for the project. Silica fume concrete costs more than type 5 cement concrete, but it is resistent to water, salt, and other corrosives and, hence, is more suitable to the type of project involved. Massport solicited the alternative bids to enable it to determine whether it could obtain the increased benefits of using silica fume concrete without incurring any substantial additional costs.

Massport's bid documents prominently notified bidders that Massport "reserve[d] the right" to award the contract on the basis of whichever alternative "may be in the best interest of [Massport]." Massport had used similar procedures and requirements on all four prior phases of the Tobin Bridge rehabilitation project and, in each instance, Massport had awarded the contract to the low bidder on the silica fume concrete alternative. White had submitted unsuccessful bids for the contracts involved in at least two of those four prior phases.

On October 25, 2000, Massport opened bids from, among others, White and M. DeMatteo Construction Company (DeMatteo). White was the low bidder for the type 5 cement alternative ($6,443,912), while DeMatteo was the low bidder for the silica fume cement alternative ($6,455,174). Because DeMatteo's low bid for the silica fume concrete alternative was only minimally ($11,262) higher than White's low bid for the type 5 cement alternative, and because Massport preferred the silica fume concrete alternative because of its superior anticorrosive properties, Massport selected the silica fume concrete

alternative and announced that the contract would be awarded to DeMatteo as the low bidder for that alternative.

On November 1, 2000, White filed a bid protest with the Fair Labor and Business Practices Unit (FLPU) of the Attorney General's office pursuant to G. L. c. 149, § 44H, alleging that Massport's proposed award of the contract to DeMatteo would violate G. L. c. 30, § 39M. An assistant attorney general assigned to the FLPU subsequently issued an advisory decision concluding that Massport's proposed award would violate the statute. Massport informed the FLPU that it disagreed with the decision and that it intended to award the Phase 5 contract to DeMatteo. DeMatteo requested that the FLPU reconsider its decision.

On January 30, 2001, White filed the present action in Superior Court and moved for a preliminary injunction prohibiting Massport from proceeding with an award of the contract to any contractor other than White. DeMatteo sought and was granted leave to intervene. White's motion was thereafter heard and denied by a Superior Court judge on February 8, 2001. The judge reasoned that White had failed to establish a reasonable likelihood of success on the merits of his claim, since all bidders "were afforded full competition as to the two alternatives" and there was no claim of improper favoritism.

On February 16, 2001, White filed a petition in the single justice session of this court pursuant to G. L. c. 231, § 118, first par., requesting review of the Superior Court's denial of its motion for a preliminary injunction. On that same date, the assistant attorney general issued a further letter to the parties stating that she had reversed her earlier decision because it had been based on the erroneous assumption that type 5 cement and silica fume were different "brands" of concrete, rather than different types of concrete. Subsequently, on February 26, 2001, a single justice of this court granted White leave to pursue an interlocutory appeal from the denial of his request for preliminary injunctive relief.

*Discussion.* In reviewing the judge's denial of a request for a preliminary injunction, we determine whether there was an abuse of discretion. See *LeClair* v. *Norwell*, 430 Mass. 328, 331 (1999). " 'An appellate court's role is to decide whether the

trial court applied proper legal standards and whether there was reasonable support for its evaluation of factual questions.' *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. 609, 615 (1980), quoting *Hochstadt* v. *Worcester Found. for Experimental Biology*, 545 F.2d 222, 229 (1st Cir. 1976). The trial court's legal conclusions, however, are 'subject to broad review and will be reversed if incorrect.' *Packaging Indus. Group, Inc.* v. *Cheney*, *supra* at 616, quoting *Buchanan* v. *United States Postal Serv.*, 508 F.2d 259, 267 n.24 (5th Cir. 1975)." *Ibid.*

General Laws c. 30, § 39M, provides in relevant part as follows:

> "Every contract for the construction, reconstruction, alteration, remodeling or repair of any public work . . . shall be awarded to the lowest responsible and eligible bidder on the basis of competitive bids publicly opened and read . . . provided, however, that such awarding authority may reject any and all bids, if it is in the public interest to do so."

The purpose of this statute is "to create an open and honest competition with all bidders on an equal footing," and to enable "the public contracting authority to obtain the lowest eligible bidder." *Petricca Constr. Co.* v. *Commonwealth*, 37 Mass. App. Ct. 392, 396 (1994). "The statutory procedure facilitates the elimination of favoritism and corruption as factors in the awarding of public contracts and emphasizes the part which efficient, low-cost operation should play in winning public contracts." *John T. Callahan & Sons* v. *Malden*, 430 Mass. 124, 128 (1999), quoting from *Interstate Engr. Corp.* v. *Fitchburg*, 367 Mass. 751, 757-758 (1975) (construing similar provisions contained in G. L. c. 149, §§ 44A-44H, applicable to public building projects).

In the present case, White does not claim that it was placed at any disadvantage in relation to the other bidders for the contract at issue. Nor does it contend that it was the low bidder for the silica fume concrete alternative which Massport ultimately chose for the project. Finally, White does not contend that Massport acted arbitrarily, or with actual favoritism, in awarding the contract to DeMatteo.

White nevertheless asserts that it was entitled to an award of

the contract under § 39M solely because its bid on the type 5 alternative was lower than DeMatteo's bid on the silica fume concrete alternative. White contends that reliance on any criterion other than the lowest bid for the contract would open the door to possible favoritism, contrary to the specific purpose of the statute. See *Petricca Constr. Co.* v. *Commonwealth, supra* at 397, quoting from *Sweeney* v. *Mayor of Malden*, 273 Mass. 536, 542 (1931) ("any application of the bidding laws which would give the awarding authority 'an opportunity to exercise favoritism in awarding contracts should be avoided' ").

It is true, as White asserts, that allowing a public body to exercise any discretion at all in awarding a contract after bids have been received inevitably gives rise to at least some possibility of favoritism. For example, in the present case, Massport might have based its post-bidding decision to use silica fume concrete on favoritism for DeMatteo rather than, as Massport asserts, on the superior qualities of such concrete and the results of the bidding. On the other hand, under the result advocated by White, every public body would be precluded from engaging in the type of reasonable cost/benefit comparison that Massport conducted in this case. Such a comparison may often be highly desirable where, as here, materials with differing properties are available.

Regardless of how we might resolve these conflicting policy considerations, we may not, by process of construction, add a prohibition to a statute when it is not contained therein. See *Modern Continental Constr. Co.* v. *Lowell*, 391 Mass. 829, 839-840 (1984) (public bidding "statutes must be interpreted as enacted and statutory omissions cannot be supplied by the court"); *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. 798, 803 (1999) (court will not read into a statute a provision that Legislature did not see fit to put there). We think this principle is applicable here, and requires us to reject White's proposed construction of § 39M as unsupported by any language in the statute. Compare *Devir* v. *Mayor of Malden*, 277 Mass. 502, 507-508 (1931) (city not precluded by competitive bidding ordinance from soliciting bids on alternative specifications or on a job whose scope is bracketed within well-defined limits). There is no language in § 39M that prohibits

a public authority such as Massport from using the type of alternative bidding procedures at issue in this case, so long as it accepts the lowest bid for the alternative ultimately selected.

White's reliance on our decision in *Sciaba Constr. Corp.* v. *Boston*, 35 Mass. App. Ct. 181 (1993), is misplaced. In that case, we held only that § 39M normally precludes an awarding authority from changing the scope of the proposed work after the competitive bidding process has been completed. *Id.* at 190. See *Grande & Son, Inc.* v. *School Hous. Comm. of N. Reading*, 334 Mass. 252, 258 (1956); *Gil-Bern Constr. Corp.* v. *Brockton*, 353 Mass. 503, 505-506 (1968). Here, by contrast, Massport did not change the scope of either of its proposed alternatives after the bids were received. Massport simply chose one of the alternatives which it had previously specified and fully described.

White further contends that, even if § 39M permits some form of alternative bid procedures, Massport's alternative bid solicitation in this case was insufficient to allow fair competition because it did not disclose, among other facts, that Massport believed that silica fume concrete was more advantageous for the project involved, or the specific criteria it would use to conduct its cost-benefit analysis after the bids had been received. White complains that, because it did not have such information, it had no means of knowing "what it [would] take to be awarded the contract."

In fact, Massport's bid solicitation documents fully explained and defined both alternatives it was considering, and made it plain that a bidder could be assured of an award of the contract only if it submitted the lowest bid on both alternatives. This is not a case like *Datatrol, Inc.* v. *State Purchasing Agent*, 379 Mass. 679, 696-702 (1980), cited by White, where, in soliciting bids for a contract for supplying a computer system, the Commonwealth's lottery commission used problem-oriented specifications rather than definite work specifications. Here, in contrast, all the bidders were given prior notice of the particular work involved, and the quantity and type of materials that would be used in both alternatives. The information provided by Massport was sufficient to place the interested bidders on an equal footing and ensure a fair selection process. See *Devir* v. *Mayor of Malden, supra* at 508.

We therefore conclude that White's request for a preliminary injunction was properly denied because White had demonstrated no reasonable likelihood of success on the merits of its claim. See *John T. Callahan & Sons, Inc.* v. *Malden*, 430 Mass. at 138. We affirm the judge's denial of the plaintiff's request for a preliminary injunction.

*So ordered.*